# LEIGHTON *v.* MACDANIEL.

DEEDS OF TRUST; RELEASE; CONTRACTS; MERGER.

1. Where a deed of trust securing the promissory notes of the grantor, after a provision giving the grantor the privilege of paying any part of the notes "before maturity thereof," provides that, "whenever any part of the principal of the said notes shall be paid," the grantor shall have the right to a *pro rata* release of the land no right to release for partial payments will accrue unless such payments are made before maturity.

2. An agreement to extend promissory notes which had matured and which were secured by a deed of trust on land, by which agreement the holder of the notes obtains additional security, and those liable for the debt obtain additional time for its payment and a reduction of interest, supersedes a provision in the deed of trust whereby the grantor

was to have a right to a *pro rata* release of the land on partial payment of the debts secured, and the rights of the grantor and those claiming under him become merged in the new contract, so that the right of release no longer exists.

No. 2016.    Submitted May 6, 1909.    Decided June 4, 1909.

HEARING on an appeal by certain defendants in a suit for the foreclosure of a deed of trust, from a decree of the Supreme Court of the District of Columbia, sitting as an equity court, denying them the right to have part of the land covered by the deed of trust released from the operation thereof. *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree of the supreme court of the District, denying the right to appellants, Benjamin F. Leighton and Irwin B. Linton, trustees, to have released any part of the land embraced in the deed of trust, the foreclosure of which was the object of the bill. The cause was heard on bill, answer, and agreed statement of facts.

On November 25, 1892, R. W. Walker and wife executed a deed of trust to William E. Edmonston and W. Henry Walker, conveying a tract of land containing 26¼ acres to secure $21,000, the purchase money, evidenced by five notes of even date, each for $4,200, with interest at 6 per cent, payable to the order of Mary MacDaniel, appellee's testatrix, in two, three, four, five, and six years, respectively. On December 21, 1892, said R. W. Walker and wife conveyed said land subject to the above trust to William O. Dennison and George H. Baldwin, in trust for a syndicate of nineteen individuals, all of whom were joined in the bill as defendants. Thereafter Benjamin F. Leighton and Irwin B. Linton, by decree of the supreme court of the District, were substituted as trustees under said syndicate deed of December 21, 1892, in the place of said Dennison and Baldwin. In the trust from said R. W. Walker and wife to

said Edmonston and Walker there is the following provision as to partial payments:

"With privilege of paying any part of any of said notes at any time before maturity thereof, provided any payment so to be made shall not be less than $500, except where the payment is for the balance due on either of said notes. It being agreed that whenever any part of the principal of said notes shall be paid, the said Redford W. Walker, his heirs and assigns, shall be entitled to have released from the operation and effect of these presents such part or parts of the hereinafter described parcel of land as shall bear the same proportion to the whole of said land, then subject to these presents, as the amount paid on said principal shall bear to the whole principal of said debt then remaining unpaid; and further, that upon a *pro rata* payment being made upon all streets, roads, or ways of any subdivision made by said Redford W. Walker, his heirs or assigns, and duly approved by the commissioners for the time being of the District of Columbia, the parties hereto of the second part shall unite in such subdivision, and releases shall be thereafter made according to such subdivision."

The first note matured in November, 1894. On December 7, 1894, $3,460.52 was paid thereon. On February 5, 1895, a payment was made of $214.24, and on January 13, 1896, $525.24 was paid, which liquidated this note. The second note was due in November, 1895. Payments thereon were made on February 5, 1896, in the sum of $273.51; July 7, 1896, in the sum of $850; July 15, 1896, in the sum of $200; and on August 25, 1904, in the sum of $692.05, leaving a balance due of $2,184.44. Rhode Island avenue having been extended through this tract, the land taken therefor was, on January 25, 1900, released from the operation of the trust. Another small piece of the tract was released on February 9, 1904. Both releases were signed by Mary MacDaniel as holder of the notes. On August 22, 1904, a date subsequent to the maturity of all the notes, an agreement in writing for the extension of each note was entered into, as follows:

Washington, D. C., August 22d, 1904.

The time of payment of the note of Redford W. Walker in favor of Mary MacDaniel, payment of which has been and is hereby assumed by William O. Dennison, for $4,200, dated November 25, 1892, payable three years after date, and secured by deed of trust on part of Quensborough and Inclosure, District of Columbia, is hereby extended to November 25, 1907, with interest at the rate of 5 per centum, per annum, payable semiannually.

Said note, and the deed of trust securing the same, are to remain otherwise unqualified and in full force, with the privilege of paying any or all of said note before maturity.

(Signed)    Wm. O. Dennison, Payee.
(Signed)    Mary MacDaniel, Holder.

A similar agreement was attached to each note. The record does not show that any demand was ever made upon the trustees for a release of more of this land until February 4, 1908, when the appellants made such demand, claiming the right to an additional release of 5.48 acres. The learned trial justice denied that right, and decreed a foreclosure under the deed of trust, and this appeal ensued.

*Mr. Benjamin F. Leighton* and *Mr. Irwin W. Linton,* the appellants, appeared in proper person.

*Mr. Irving Williamson* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

The makers of these notes were under a legal obligation to pay them at maturity. Wishing to reserve the privilege of making partial payments, they caused the provision in respect to such payments to be inserted in the deed of trust. The agreement as to the effect of partial payments immediately follows a provision that they may be made, and is, we think, to be read with it. The provision for partial payments, in terms, limits

the right to make them to "any time before maturity" of any of said notes, and we think the provision, "whenever any part of the principal of said notes shall be paid," the right to a release shall arise, should be construed as though it read, "whenever any part of the principal of said notes shall be *so* paid," the right to a release shall arise. Cogency is added to this view, it seems to us, by the clause in the first provision, limiting the right to make partial payments to sums of "not less than $500, except where the payment is for the balance due on either of said notes." It will be observed that, in the following sentence, providing for releases, the language is, "it being agreed that whenever *any part* of the principal of said notes shall be paid," etc. Unless, therefore, the two provisions are to be considered together, the clause in the first provision, that no payment except the last shall be in a sum less than $500, is meaningless. Manifestly the words "any part," in the second provision, mean any part over $500 except the last payment. We hold, therefore, that no right to release for partial payments accrued under this deed of trust unless such payments were made before maturity. This conclusion is sustained by *Reed* v. *Jones,* 133 Mass. 116. There the mortgage contained a proviso reserving to the mortgagor the right at any time within the life of the note, which was to run for five years, to pay the whole or any part of said note, with the right to receive from the mortgagee a release of any portion of the premises upon the payment of a sum not exceeding the rate of 12 cents per foot for the portion so released. The court ruled that, to determine the true construction of these stipulations, the whole instrument should be taken together, and reference had to its objects and purposes. The court further said: "In the present case, the time for the payment of the whole of the principal debt has expired, and the mortgagor is in default as to the payment, not only of the interest and taxes, but also of the principal. No demand for a release of the portion of the mortgaged premises now in controversy, nor tender of the stipulated rate per foot for the same, was made until more than two years after the expiration of the time for the payment of the principal. There ꙗ no averment or proof of any act done or assurance given by

the defendants within five years, which would give the mort-gagor a right to suppose that his privilege of demanding such re-lease would be extended after a failure to pay the principal debt at its maturity.    *    *    *    The provision giving to him [the mortgagor] the privilege of obtaining such release, upon such terms, is not an independent stipulation, which he can have the aid of a court of equity in enforcing while he is in such default, and while he disregards all the promises made by him in the same contract." To the same effect are: *Werner* v. *Tuch,* 52 Hun, 269, 5 N. Y. Supp. 219; *Commercial Bank* v. *Hiller,* 106 Mich. 118, 63 N. W. 1012.

*Prout* v. *Roby,* 15 Wall. 471, 21 L. ed. 58, relied upon by ap-pellants, is not in conflict with the above conclusion. In that case it was held that a covenant in a lease for ninety-nine years, with the privilege of perpetual renewals, to convey the land in fee simple to the lessee, her heirs and assigns, at any time there-after upon the payment of a specified sum over and above the rents then due, entitled the heir of the lessee, upon the payment of the rent in arrears and the amount expended for taxes, both with interest, and the purchase money, to a conveyance. Obvi-ously, there is a broad distinction between the two cases.

If any doubt existed in our minds as to the proper interpre-tation to be given the above provision in the deed of trust, the language of the contract of extension would, alone, compel us to sustain the decree. That agreement was entered into long after the accruing of the alleged right to a release. It is not disputed that this contract was accepted by and bound the parties, and whatever their rights may have been previously, we think they became merged in the new contract. On this branch of the case the learned trial justice, in the opinion accompanying the decree,. said: ·

"There can be no question that the defendants, the members of the syndicate, accepted the new contract, for they have acted under it;· and, being a contract by which they were benefited, they would be presumed to have accepted it. Neither can there be any question that the new contract took the place of the old, either as a novation, or as a merger of the old contract into the

new; and that, therefore, in ascertaining the rights of either party, the new contract must govern, so far as it differs from the old.

"The new contract expressly gives the right to pay in any instalments, and is silent as to the right of any release. It must therefore be assumed that the right to a release, if it exists at all, must depend on the terms of the original contract; and its right under that is based on the partial payments to be previously made."

Even assuming that, prior to the agreement extending the time of payment of the notes, a right to the release of additional land existed, we think the effect of the agreement would have been to abrogate the right. By this agreement the holder of the notes obtained additional security, and the members of the syndicate obtained additional time and a reduction of interest. The notes and the deed of trust were to remain otherwise unqualified except that any sum, instead of a sum not less than $500, could be paid before maturity. The record fails to show that any demand had theretofore been made for the release now claimed, or that any demand based upon any of said partial payments was subsequently made until long after default of payment under the agreement for extension.

There was a default in the payment of the notes of the original agreement, and there is a similar default under the agreement for their extension. It is apparent that the land covered by the trust is at least of no greater value than the amount due upon the notes. The appellants do not offer to pay these notes, and, notwithstanding their default, they seek to diminish the security to such an extent as to result in a loss to the appellees.

We agree with the learned trial justice that "the contention of the defendants that they are entitled to have a release of a portion of said tract is without foundation either in equity or at law."

The decree is affirmed, with costs.          *Affirmed.*