STATE ex rel. THE STURGEON BAY AND LAKE MICHIGAN SHIP CANAL AND HARBOR COMPANY vs. THE COMMISSIONERS OF SCHOOL AND UNIVERSITY LANDS.

CONSTRUCTION OF STATUTES: *Act of the legislature conferring lands on the relator, construed. Principles of statutory construction. Power of the commissioners of S. and U. lands.*

1. Ch. 105, Laws of 1868, confers upon the relator certain lands granted by congress to aid in the construction of a ship canal, etc., and provides, in substance, that when the governor of this state is satisfied that the relator has done one-fourth, one-half or three-fourths of the work required in constructing such canal, etc., he shall certify the same, "and in said certificate shall determine the *proportion of said lands* the said company has become entitled to in consideration of said work so done," and that thereupon the commissioners of S. and U. lands shall convey by patent to the company "said proportions of said lands respectively *as selected by said company.*" *Held*, that upon the certificate of the governor that the company has completed one-fourth of the work, and is entitled to one-fourth of the lands, said company could claim from the commissioners only one-fourth *in value* of said lands, and *not* one-fourth *in quantity.*

2. The word "proportion" in the statute is *ambiguous*, and may be understood of a proportion in value or a proportion in quantity.

3. In *interpreting ambiguous words in a statute*, regard must be had to the whole scope of the statute, and to other statutes *in pari materia* and connected with it, so as to ascertain the intent of the legislature.

4. That construction is always best (if not forbidden by other considerations), which will best subserve the great primary object of the lawgiver.

5. The obvious *intent of the legislature* in the act here in question is to secure the entire completion of the ship canal, etc., therein mentioned; and this favors the construction here adopted, which is *not forbidden* by the words cited, nor by any other clauses or words of the statute.

6. The facts that the lands to be patented by the commissioners are to be "selected by the company," and that no provision is made in the act for determining the value of the different sections of land granted, *do not forbid the construction* above stated; it being at least competent for the commissioners and the company to *agree* upon such value.

7. Whether the commissioners have power to appoint agents to examine and report the value of such lands, or to agree with the company in selecting such agents, is not here determined.

APPLICATION for a *Mandamus*.

Chapter 365, General Laws of 1864, incorporated the *Sturgeon Bay and Lake Michigan Ship Canal and Harbor Company*, with power "to locate, construct and build a canal   *   *   for all classes of shipping on the lakes, between the head of Sturgeon Bay, in the county of Door, and Lake Michigan, so as to connect the waters of said bay with said lake, and to construct a break-water and harbor on the lake shore, at the mouth of said canal, and to dredge and improve the said bay so as to make a convenient and safe anchorage and harbor" therein.

By an act of congress, approved April 10, 1866, there was granted to the state of Wisconsin, for the purpose of aiding such state in constructing and completing a breakwater and harbor and ship canal to connect the waters of Green Bay with the waters of Lake Michigan, two hundred thousand acres of the public lands of the United States, to be selected in the manner therein specified. The act further provided, that the lands so granted should be subject to the disposal of the legislature of this state (or, in certain contingencies, not now important, to the disposal of the governor and the commissioners of school, university and swamp lands of the state), for the purposes above named; and that said canal should be and remain a public highway, etc. The act contains other provisions, which are not important here.

By chapter 105, General Laws of 1868, the legislature of this state accepted the "lands, franchises, rights," etc., conferred on the state by the aforesaid act of congress. For the purpose of carrying out the objects of said act, section two of said chapter declared that said lands were thereby granted to and conferred upon the *Sturgeon Bay and Lake Michigan Ship Canal and Harbor Company*, subject to the conditions, restrictions and obligations thereinafter mentioned. Sections four and five im-

posed certain duties upon the company, which need not be here stated. Section four provides as follows: "It shall be the duty of said company, after having made and filed such survey and plan of such canal, to proceed without unnecessary delay, and construct the same in conformity therewith: *provided*, that as the work on said canal progresses, the company may notify the governor that one-fourth, or one-half, or three-fourths of said work has been done, respectively, when, upon receiving such notification, the governor shall appoint an agent to inspect the same, and if said governor is satisfied that so much of said work has been done, in accordance with the requirements of this act and of the act of congress aforesaid, then the said governor shall certify the same to said company, and deposit a copy thereof in the office of the secretary of state, and in said certificate shall determine *the proportion of said lands* the said company has become entitled to in consideration of said work so done and approved by said governor; and when the governor shall make and file such certificate, the commissioners of school and university lands shall convey by patent to the said company *said proportions of said lands respectively, as selected* by said company," etc.

The company proceeded to construct the canal, etc., pursuant to said last mentioned act, and notified the governor of this state that it had completed one-fourth of the work; and the governor thereupon appointed an agent to inspect the same, upon whose report the governor, on the 7th of October, 1873, certified that he approved of the work so done, and that the company, in consideration of the work so done and approved, *was entitled to one-fourth* of the lands so as aforesaid granted by congress; and a copy of this certificate was duly deposited in the office of the secretary of state. The company then selected fifty thousand acres from the two hundred thousand acres included in the grant, and tendered payment of all expenses incurred by the state by virtue of said ch. 105, Laws of 1868, and of the act of congress therein referred to (such payment

State ex rel. S. B. & L. M. Sh. C. & H. Co. vs. Com'rs of S. & U. Lands.

being required by the terms of said ch. 105), and demanded of the commissioners of school and university lands that they should convey to it (said company) the fifty thousand acres so selected; but the commissioners refused to make such conveyance. Thereupon the company filed its petition in this court, setting forth the several acts of congress and of the legislature of this state relating to said canal, etc., and to said lands, alleging fulfillment of all conditions precedent on the part of the company, as well as the facts above stated, and asking that a writ of *mandamus* issue to the commissioners (naming them), commanding them to convey by patent to the company the fifty thousand acres above mentioned.

It was stipulated by the parties, through their attorneys, that the petition, as filed, should be taken as an alternative writ of *mandamus*, without the formal issue or service of such writ, and that the defendants should answer thereto, and upon the hearing of the answer such proceedings should be had as if the alternative writ had been issued and answered. Thereupon the commissioners made return that the fifty thousand acres of land described in the list furnished by the relator to them, and of which it had demanded a patent, were, according to their best information and belief, of much greater value than the average of the lands embraced in the grant referred to in the petition, and were "considerably more than one-fourth of said grant, taking quality or value as well as quantity into account;" and that they (the commissioners) declined for this reason to issue the patent demanded.

To this return the relator demurred.

*E. B. McCagg*, for the relator.

*The Attorney General*, for the respondents.

DIXON, C. J.  Recognizing to the fullest extent, as this court has not unfrequently done heretofore, the doctrine contended for by the learned counsel for the relator, that where the words of a statute are plain and unambiguous and such as are ordi-

narily incapable of different applications, or are commonly used in one general sense, we are bound to adhere to the ordinary meaning of them and to their grammatical construction, regardless of any equity which may be raised upon the statute, or of any public or private inconvenience or injustice which may follow, and that we cannot depart from such ordinary grammatical meaning and construction, unless they are at variance with the intention of the legislature to be collected from the statute itself, or lead to some manifest absurdity or repugnance, we are nevertheless of opinion that this is not a case within the operation of the rule, the correctness of which is thus conceded. We disagree with the learned counsel as to the ordinary meaning and use of the word "proportion" found in the statute, upon the import and application of which the controversy chiefly depends. We think, also, that there was an omission from the statute of some words which were requisite to make the intention of the legislature entirely clear and certain, according to the position taken by counsel on either side. For the relator, to render the position assumed by its counsel clear and indubitable, it required the insertion of the words "in acres" after the word "proportion." For the respondents, to show that the position of their counsel is unmistakably correct, the words "in value" should have been used in the same place. In either view, therefore, assuming for the present that we are correct as to the ordinary signification and use of the word "proportion," it is a case where some words are wanting to make the intention of the legislature entirely clear. Either the words "in acres" or the words "in value" must be supplied, or the statute interpreted as if they were expressed. It is, then, a statute of doubtful words — words fairly susceptible of two meanings — and where the intention of the law maker is ambiguously expressed, that we are called upon to expound. In such a case, interpretation is allowable, and the court is authorized to and must look beyond the very words under construction to ascertain the intention of the legislature. It must look to the whole

scope of the statute, and to other statutes *in pari materia* and connected with it, and to the apparent intention of the legislature, derived from the whole.   *Mundt v. Railroad Co.*, 31 Wis., 451, 458; *Buffham v. Racine*, 26 id., 449.

To return to the question first stated, namely, as to the ordinary meaning and use of the word "proportion," we are of opinion that it is as appropriately and generally employed to indicate one's share or portion when the whole of a thing is distributed according to value, as when it is arranged and divided with relation to magnitude or quantity.  One of Webster's definitions is : "The portion which falls to one's lot when a whole is distributed by a rule or principle; *equal or just share; lot.*" In this instance, the rule or principle of *equality in value* may have been that intended by the legislature; in which case "the proportion of said lands the said company has become entitled to " is one-fourth thereof in value.   One-fourth of the lands in value would be its "equal and just share."   In further illustration of the correct use of the word "proportion " when value as well as magnitude or quantity is spoken of, we may cite the quotation from Addison, given by Webster in defining the verb.   It is as follows: "In the loss of an object, we do not *proportion* our grief to its real *value*, but to the *value* our fancies set upon it."

The court experiences no difficulty, therefore, in saying that it is one-fourth part in value of the lands to which the relator is entitled, provided, upon consideration of the whole and every part of the statute, and of the act of congress donating the lands, such seems to have been the legislative intent.

It is not to be questioned, we think, that the intention clearly manifested by congress in making the grant, and by the legislature of the state in accepting it (which, though it may have the power to defeat the object of congress by disposing of the lands without the making or completion of the improvement, has shown no such purpose or disposition), favors the construction put upon the statute by the respondents, and contended

for by the attorney general, who represents them. The legis
lature has indicated its purpose to give effect to the will and
expectation of congress, and faithfully to execute the trust re
posed in the state, by the very words of the statute under con
sideration, which require the governor to satisfy himself that
the "work has been done in accordance with the requirements
of this act and of the act of congress aforesaid." The spirit and
policy of the acts, both of congress and of the legislature, seem
to demand, therefore, the construction given by the commis·
sioners, unless such construction is repugnant to particular
words of the statute establishing a contrary intent. They de·
mand such construction, because otherwise, upon the facts re
turned by the commissioners, the object of congress and of the
state, in donating any part of the lands, may be ultimately de
feated. Other circumstances being equal, or not preventing,
that construction is always best which will best subserve the
great primary object of the lawgiver.

Upon examining the statute, we find no special words or
clauses in it inconsistent with this construction or going to
show a different intent. None such were pointed out or are
relied upon by counsel. Some stress was laid upon the pro-
vision that the lands to be conveyed are such as are "selected
by said company," and also upon the absence from the statute
of any clause or clauses declaring how the value of the lands
shall be ascertained. It is obvious that apportioning and con-
veying the lands according to their value will not interfere
with or defeat the company's right of selection. The lands
selected may be less in quantity than fifty thousand acres or
one-fourth the area of the entire grant, but the one-fourth in
value may be taken by the company wherever it chooses from
the lands granted, and those selections may be made which are
most to be preferred on account of their marketable situation
and present cash value.

And with respect to the absence from the statute of any pro-
visions for ascertaining the relative value of the lands selected

to the whole quantity granted, we can not look upon this as a circumstance which should control the construction, or as one indicating with any clearness and certainty that the legislature intended that quantity and not value should govern in the apportionment and conveyance. This may have been an oversight on the part of the legislature, or it may possibly have been thought that no such provisions were necessary. At all events, it was left open to the commissioners and the company to agree upon the value, which is one way of giving effect to the act as it now is. It was suggested at the bar that the commissioners have the power to designate and appoint suitable persons as agents to examine and report the relative values of the lands, or that they are authorized to agree with the company in the selection and appointment of such persons. We are not sufficiently familiar with the powers and duties of the commissioners to say how these things may be, and for the present are not required to investigate them. We are only required to say that, in our judgment, the circumstance here alluded to is not one which can vary the construction of the statute as above given, and for the reasons we have above attempted briefly to state.

*By the Court.*— The demurrer to the return is overruled.