JAMES H. REED & another *vs.* HENRY E. JONES & another.

Suffolk.　Nov. 17, 1880; Nov. 9, 1881; May 6. — June 28, 1882.

The condition of a mortgage of land contained the provisions that the mortgagor should pay to the mortgagee a certain sum in five years, with interest at a certain rate, payable semiannually; that the mortgagor should also pay all taxes and assessments upon or on account of the mortgaged premises; that the mortgagor might at his option pay the whole or any part of the mortgage debt at any time within the five years; and that the mortgagee would at any time release to the mortgagor any portion of the premises upon payment of a certain sum per foot for the portion so released, which amount should be indorsed upon the mortgage note. After default, not only as to the payment of the interest and taxes, but also of the principal, a person, who bought the land subject to the mortgage, brought a bill in equity against the mortgagee to compel the release of a portion of the mortgaged premises. No demand for such release, nor tender of the stipulated price per foot for the same, was made until more than two years after the expiration of the time for the payment of the principal; and the mortgagee had not by any act waived or deprived himself of any rights under the mortgage. *Held*, that the bill could not be maintained.

BILL IN EQUITY, filed August 2, 1879, by James H. Reed and William A. Low against Henry E. Jones and Isaac Pratt, Jr., trustees under the will of David Morrison, deceased, for the specific performance of an agreement by the defendants to release a certain parcel of land from a mortgage executed by the grantor of the plaintiffs to the defendants, and to restrain the defendants from selling said land under a power of sale contained in the mortgage. The case was referred to a master, who found the following facts:

On February 27, 1872, the defendants conveyed to Eben Sears a parcel of land in Boston, containing about two hundred and sixty-two thousand square feet, for the sum of $26,201. Sears paid $5000 in cash, and gave his note for the balance, secured by a mortgage of the land, dated February 27, 1872, which contained the following condition:

" Provided, nevertheless, that if the said grantor, or his heirs, executors or administrators, shall pay unto the said grantees, or their executors, administrators or assigns, the sum of twenty-one thousand two hundred and one dollars in five years from the day of the date hereof, with interest on said sum at the rate of seven per centum per annum, payable semiannually, (but it is hereby

expressly agreed that the said mortgagor may at his option at any time within said five years pay the whole or any part of said sum,) and the said mortgagees, their executors, administrators and assigns, hereby agree with said mortgagor, his heirs and assigns, that they will at any time release to the said mortgagor, his heirs and assigns, any portion of the said premises upon the payment to said mortgagees, their executors, administrators and assigns, at a sum not exceeding the rate of twelve cents per foot for the portion so released, which amount shall be indorsed upon the mortgage note, and also pay all taxes and assessments levied or assessed upon or on account of the said premises: then this deed, as also a certain promissory note bearing even date with these presents, signed by said Eben Sears, whereby for value received he promises to pay the said grantees, or order, the said sum and interest at the times aforesaid, shall both be absolutely void to all intents and purposes." The mortgage also contained the usual power of sale.

On March 5, 1872, Sears conveyed the land in question to the plaintiff Reed and to William F. Humphrey, subject to the mortgage; and on June 23, 1874, Humphrey conveyed one undivided half of the land to the plaintiff Low, subject to the mortgage, one half of which Low agreed to pay, and to hold the grantor harmless from.

On June 14, 1876, the defendants, on being paid the rate per foot stated in the condition of the mortgage, released to the plaintiffs ten thousand five hundred and forty-eight feet of land, with a house thereon, and on December 7, 1876, made a similar release of seventeen thousand two hundred feet of land, upon which was also a house.

Before the maturity of the mortgage, the plaintiffs staked off the land which they seek to have released from the mortgage, and built a house thereon. The defendant Pratt knew of the building of the house, but not of the staking off of the land.

On February 27, 1877, when the mortgage note matured, there was due and unpaid upon it $17,871.16 of the principal, and $662.18 of the interest; and the taxes for the year 1876 on the land had not been paid.

On April 25, 1878, $17,871.16 of the principal of the note, together with $2114.70, interest thereon, and taxes amounting

to $462.61, being unpaid, the defendants entered for condition broken, and duly filed a certificate of their entry in the registry of deeds. At this time, the house on the land which the plaintiffs seek to have released from the mortgage was in possession of a tenant of the plaintiffs. He remained in possession until January 1, 1879. From that time until May 1, 1879, the premises were unoccupied, and then the plaintiffs let the same to another tenant. The defendants did not attempt to collect any rent therefor, or to exercise any actual control thereof, until some time in June 1879, when they undertook to collect the rent. The defendants advertised the entire estate included in the mortgage, except the two parcels released on June 14 and December 7, 1876, for sale, by public auction, on August 12, 1879, for breach of the condition of the mortgage.

The master further found, that the plaintiff Reed was at all times, after the house in question was built, able and ready to pay for the release of the premises in question from the mortgage, but that the plaintiffs had not, at the date of the maturity of the mortgage note, notified the defendants of their readiness to pay the amount required to be paid to release the premises from the mortgage; and that the defendants had not by any acts of theirs waived or deprived themselves of any of their rights under their mortgage.

The master also reported the evidence bearing upon the question whether the plaintiffs made a sufficient tender in July 1879, his finding being that the tender was not sufficient. This evidence it is not necessary now to state.

The case was heard before a single justice of this court, who ordered a decree to be entered in favor of the plaintiffs, on their paying the sum of $1200 with interest at the rate of seven per cent, and the taxes due on the premises in question. The defendants appealed to the full court.

The case was argued at the bar in November 1880, and was afterwards submitted on briefs to all the judges.

*T. P. Proctor*, for the defendants.

*G. H. Kingsbury*, for the plaintiffs.

C. ALLEN, J. The substance of the provisions contained in the condition of this mortgage is as follows:

1. The mortgagor is to pay to the mortgagee the sum of $21,201 in five years, with interest at the rate of seven per cent per annum, payable semiannually.

2. The mortgagor is also to pay all taxes and assessments upon or on account of the mortgaged premises.

3. The mortgagor may at his option pay the whole or any part of the mortgage debt at any time within the five years.

4. The mortgagee will at any time release to the mortgagor any portion of the premises, upon payment of a sum not exceeding the rate of twelve cents per foot for the portion so released, which sum shall be indorsed upon the mortgage note.

The last provision has been treated by the parties as if the sum contemplated was at the rate of precisely twelve cents per foot, and no question arises upon the phraseology "not exceeding" twelve cents per foot.

In order to determine the true construction of these various stipulations, and especially of the last, in its relation to the others, and whether it is an independent or dependent stipulation, the whole instrument is to be taken together, and reference is to be had to its objects and purposes. *Cadwell* v. *Blake*, 6 Gray, 402. *Knight* v. *New England Worsted Co.* 2 Cush. 271, 286. *Howland* v. *Leach*, 11 Pick. 151.

Looking at this instrument in view of this general rule, it is apparent that the general purpose of the mortgage is to make a security for the mortgage debt. This debt is due at a specified time, with the privilege on the part of the mortgagor of paying the whole or any part of it before it becomes due. If, for example, the value of the premises increases, either from a general rise in the value of real estate, or by reason of increasing demand for dwellings or for business purposes in the neighborhood, or of special improvements or additions upon this particular estate, the mortgagor retains the opportunity to go into the market and secure a loan on better terms if he can, and thus pay off the mortgage debt. In addition to this, he may also call for releases of portions of the mortgaged premises from time to time, upon making a stipulated payment therefor ; thus enabling himself to make sales of small lots to purchasers, and to convey a clear title. It is to be observed, however, that this stipulated payment is the same in amount, at whatever time it may be made

and the release called for. That is to say, whether the mort-
gagor demands such release at the end of six months, or at a
later period, he is in either case to pay at the rate of twelve
cents a foot. There is a further provision that the sum so paid
shall be indorsed upon the mortgage note. This excludes the
idea that it can be appropriated towards the payment of taxes or
assessments. The provision does not in terms specify that such
payment shall be so indorsed in reduction of the principal of the
note, and that it shall not be applied upon the interest; but this
also is perhaps to be inferred. The mortgagor is at all events
to pay certain sums; namely, the semiannual interest, and taxes
and assessments, and the principal of the debt at its maturity.
He reserves to himself the privilege of paying other sums. The
payment of the former is a positive duty. The payment of the
latter is a privilege which he secures to himself for his own con-
venience or advantage. If, under these provisions, even within
the five years, the mortgagor were in default in the payment of
interest or taxes, it would be a grave question whether a court
of equity would assist him, during the continuance of such de-
fault, to obtain a release of any portion of the mortgaged prem-
ises upon the payment merely of the stipulated rate per foot.
But that question does not arise here. In the present case, the
time for the payment of the whole of the principal debt has
expired, and the mortgagor is in default as to the payment, not
only of the interest and taxes, but also of the principal. No
demand for a release of the portion of the mortgaged premises
now in controversy, nor tender of the stipulated rate per foot for
the same, was made until more than two years after the expira-
tion of the time for the payment of the principal. There is no
averment or proof of any act done or assurance given by the
defendants within the five years, which would give the mort-
gagor a right to suppose that his privilege of demanding such
release would be extended after a failure to pay the principal
debt at its maturity. The master finds that the defendants have
not, by any acts of theirs, waived or deprived themselves of any
rights under their mortgage. The plaintiffs do not now offer
to pay the debt, or the arrears of interest or taxes; but seek to
obtain a release of a particular portion of the premises, with-
out such payment. But a majority of the court are of opinion,

that, under these circumstances, the mortgagor is not entitled to avail himself of this privilege. If he were, he might demand a release of the most desirable and valuable selected portions of the premises, upon the payment of only twelve cents per foot, and the whole amount so paid might be less than the unpaid interest and taxes; and leave the whole principal of his debt unpaid, and the mortgagee's security for its payment greatly impaired. The provision giving to him the privilege of obtaining such release, upon such terms, is not an independent stipulation, which he can have the aid of a court of equity in enforcing while he is in such default, and while he disregards all the promises made by him in the same contract. See *Butman* v. *Porter*, 100 Mass. 337 ; *Marble Co.* v. *Ripley*, 10 Wall. 339, 358 ; *Colson* v. *Thompson*, 2 Wheat. 336 ; Story Eq. Jur. §§ 736, 771 ; Chit. Con. (11th Am. ed.) 1084.

The plaintiffs, as assignees of the equity of redemption, took their title with notice of what the mortgagees were entitled to receive, and subject to the payment of the sums stipulated for in the condition, and their equity is no greater than that of the original mortgagor.

This view of the true construction of the condition of the mortgage renders it unnecessary to consider the other questions argued.                                       *Bill dismissed.*