CALIFORNIA STATE LIFE INS. CO. v.
ELLIOTT. (No. 1129.)

(Court of Civil Appeals of Texas. Amarillo.
March 14, 1917. Rehearing Denied
April 11, 1917.)

1. VENDOR AND PURCHASER ☞267 — VEN-
DOR'S LIEN—RELEASE—"BALANCE DUE."

Where a deed from a vendor who received
vendor's lien notes in payment provided that the
purchaser upon payment of one-tenth of the
balance due upon the notes, though made after
maturity, would be entitled to a release of the
vendor's lien on a proportional part of the land
to be designated by him, the phrase "balance
due" includes principal and unpaid interest due
on the notes at the date of the payment (citing
Words and Phrases, Balance Due).

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 751–758.]

2. TENDER ☞12(2)—SUFFICIENCY.

Where a man does not know exactly what
sum is due, he must at his peril take care to
tender enough, and a deficient tender gives him
no rights.

[Ed. Note.—For other cases, see Tender, Cent.
Dig. § 22.]

3. TENDER ☞9 — TIME OF — COMMON-LAW
RULE.

While at common law a tender must be
made before suit is filed, the rule that tender
may be made after default is now almost wholly
universal, and tender at any time before suit
save in cases where time is the essence of the
contract is good.

[Ed. Note.—For other cases, see Tender, Cent.
Dig. §§ 13–19.]

4. CONTRACTS ☞147(3) — CONSTRUCTION —
CANONS.

That construction should be given a con-
tract which will harmonize and give an inter-
pretation to each clause consistent with the
meaning of the rest of the instrument.

[Ed. Note.—For other cases, see Contracts,
Cent. Dig. §§ 730, 743.]

5. VENDOR AND PURCHASER ☞267 — AGREE-
MENTS—CONSTRUCTION.

Where a deed to land in payment for which
the vendor received vendor's lien notes pro-
vided that the purchaser on payment of one-
tenth of the balance due on the notes might
secure a release of the vendor's lien on a pro-
portional part of the land to be designated by
him, the purchaser cannot after default and in-
stitution of foreclosure suit pay one-tenth of
the balance due and demand a release on the
lien on a proportional part of the land; such
agreement being only collateral to the main pur-
pose of the contract.

[Ed. Note.—For other cases, see Vendor and
Purchaser, Cent. Dig. §§ 751–758.]

Boyce, J., dissenting in part.

Appeal from District Court, Deaf Smith
County; D. B. Hill, Judge.

Action by the California State Life Insur-
ance Company against Robert Elliott. From
the judgment, plaintiff appeals. Reversed
and remanded.

Veale & Lumpkin, of Amarillo, for appel-
lant. Gilliland & Estes, of Hereford, for ap-
pellee.

HALL, J. Appellant insurance company
sued the appellee to recover the principal,
interest, and attorney's fees upon three ven-
dor's lien notes and to foreclose the lien upon
certain town property situated in the city of
Hereford, alleging that on June 28, 1909, for
a valuable consideration, defendant executed
and delivered to A. A. Moody three certain
promissory notes, the first in the sum of $500,
the second for the sum of $400, and the third
for the sum of $500, each due and payable at
Hereford, Tex., after one, two, and three
years, respectively, all bearing interest at the
rate of 10 per cent. per annum from date,
and containing a provision that in the event
of default in the payment of either of said
notes or any installment of interest when
due, and said notes are placed in the hands
of an attorney for collection, an additional
charge of 10 per cent. on the principal and
interest should be added as attorney's fees;
that each of said notes were given for a part
of the purchase money of the west half of
block 8 of Evants addition to the town of
Hereford, in Deaf Smith county, Tex., which
said land was conveyed to the defendant by
the said Moody and wife on the 28th day of
June, 1909, by a deed of general warranty in
which the vendor's lien was expressly retain-
ed on said property to secure the payment
of said notes; that afterwards, on or about
February 21, 1911, the said Moody, by an
instrument in writing, sold, assigned, and
conveyed to the Amarillo National Life Insur-
ance Company the above-described notes and
lien, and afterwards, to wit, on or about the
7th day of April, 1916, the said Amarillo
National Life Insurance Company for a valu-
able consideration sold and transferred to
plaintiff each of the said notes and lien by
written transfer; that on or about the 9th
day of September, 1916, and after the matu-
rity of all of the notes, the defendant, Rob-
ert Elliott, for a valuable consideration, made,
executed, and delivered to the Amarillo Na-
tional Life Insurance Company his certain
instrument in writing, whereby the time of
the payment of the above-mentioned notes
was extended until the 28th day of June,
1916, and the vendor's lien therein mentioned
was renewed, and in said instrument the
defendant obligated himself, in consideration
of the extension of time granted him in
which to pay said three notes, to pay the
same on June 28, 1916, according to the terms
and provisions thereof; that said extension
was duly recorded in the deed records of Deaf
Smith county; that said notes are long past
due; that plaintiff is the owner and holder
of the same, no part of which has ever been
paid except certain credits mentioned and de-
scribed in the pleadings; that by reason of
the defendant's failure to pay said notes it
was compelled to place same in the hands of
its attorneys for collection; that by reason
thereof the defendant became liable to plain-
tiff for the principal, interest, and attorney's
fees due upon said notes; and that, although

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

said sums are long past due and payable, and although the defendant has been requested to pay the same, he has failed and refused to pay either of said notes or any part thereof.

Defendant answered by general demurrer, general denial, and by special answer, in which he admitted the execution and delivery of the notes and his liability thereon, and that under and by virtue of the provisions in the deed from Moody and wife to him he was entitled to have released from plaintiff's vendor's lien a certain part of the lands therein conveyed, to be designated by him, and in said answer designated one-half an acre situated on the west part of said block; that the provision in the deed from Moody is as follows:

"But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described property, premises, and improvements until the above-described notes and all interest thereon are fully paid according to their face and tenor, effect, and reading, except that vendor agrees to release such a proportional part of said land when payment shall be made amounting to not less than one-tenth part of the balance due, when this deed shall become absolute."

Defendant further alleges that on December 26, 1913, he paid on the above-mentioned notes the sum of $101.46, which amount was credited on note No. 1, and that on June 26, 1916, he tendered the appellant the sum of $49.10, requesting a release of the vendor's lien upon the one-half acre of land above mentioned, which tender and request was by the appellant refused, and that by the terms of said deed and by virtue of said payment and tender the defendant had paid and delivered to plaintiff a one-tenth part due on said note, and by reason thereof was entitled to defeat plaintiff's lien against the above-described one-half acre of land; that the $49.10 is here tendered to plaintiff; that after he had purchased said property he built a residence upon the west one-half acre of the block, and has used and occupied the same since said time as his homestead; and that by reason thereof he was entitled to a cancellation of plaintiff's vendor's lien against the one-half acre of land above mentioned.

By supplemental petition plaintiff alleged that defendant was in law and in equity estopped from setting up any defense for the reason that on or about the 9th day of September, 1915, and after the maturity of the note sued upon, and after the defendant had paid the sum of $101.46 on December 26, 1913, on note No. 1, that the defendant made, executed, and delivered to the Amarillo National Life Insurance Company, the then owner of said notes, a contract in writing, wherein the time of payment of said notes was extended to June 28, 1916, and the vendor's lien retained to secure said notes renewed, and that defendant by said contract guaranteed to pay said notes according to their terms and provisions, and acknowledged

such notes, due and owing, and acknowledged the validity of the vendor's lien, which said renewal contract was duly recorded in the deed records of Deaf Smith county. Plaintiff introduced in evidence the three notes described in the petition, note No. 1 showing a credit of $101.46 December 26, 1913, and each of the notes showing a credit of all interest due on December 28, 1913. Plaintiff also offered in evidence a deed from Moody and wife to Robert Elliott, dated June 28, 1909, conveying the block of land in question and describing the three notes sued upon; a written transfer of the three vendor's lien notes executed by Moody to the Amarillo National Life Insurance Company and a transfer by said Amarillo National Life Insurance Company to the appellant company of the same notes, together with the vendor's lien; also the renewal and extension agreement made with Elliott dated September 9, 1915. The record contains a written stipulation by the attorneys that on June 26, 1916, defendant Elliott tendered plaintiff $49.10, and that on December 23, 1913, he paid $101.46 on note No. 1, and that at the time of the tender of said $49.10 the defendant demanded a release of part of the block No. 8 of Evants' addition to the town of Hereford, and being described in his answer, which tender plaintiff refused to accept and still refuses to accept, and waived the tender of said sum of $49.10 into open court; that the one-half acre of land described in defendant's answer has improvements upon same of the value of $3,000, which have been placed upon said land since the date of said notes; that the defendant is a married man and erected said improvements upon said land and moved thereon with his family in the year 1910, for the purpose of making it his home, and has resided there since said date; and that the remaining 4½ acres of land are worth between $200 and $300 per acre.

A jury was waived, and a trial before the court resulted in a judgment in favor of the plaintiff insurance company against the defendant in the sum of $1,881.93, being the amount of the principal, interest, and attorney's fees due upon said notes, decreeing a foreclosure of the vendor's lien against 4½ acres of the land, and denying a foreclosure as against the one-half acre upon which the improvements were situated and described in the defendant's answer, and canceling the lien as to said half acre. This judgment is dated November 17, 1916. On November 18, 1916, there was entered what is styled a "corrected judgment," which in its terms is identical with the original judgment, except that it cancels the lien upon the west one-half acre of land upon defendant paying into court the sum of $190.21.

[1] The third assignment of error is that the court erred in holding that, under the clause and provision contained in the deed from Moody and wife to the defendant, El-

liott, to the effect that the payment of one-tenth of the balance due upon said notes could be made after their maturity, when so paid defendants would be entitled to a release of the vendor's·lien on the proportional part of said land, to be designated by him. Under the provision in the deed before appellee could demand a release of one-tenth of the land he must have paid, or tendered, not less than one-tenth of the "balance due." The balance due on June 26, 1916, included the principal and unpaid interest on that date. 1 Words and Phrases, 679; Appeal of Sinclair, 116 Pa. 316, 9 Atl. 637. On December 26, 1913, after appellee had paid $101.46, which was credited on note No. 1, there remained due and unpaid the principal sum of $1,298.54.

[2] The notes provide that the interest at the rate of 10 per cent. is payable annually, and in default of the payment of the interest when due it shall be added to the principal and bear interest at the rate of 10 per cent. Calculated upon this basis, there was due on the notes June 26, 1916, when appellee tendered the sum of $49.10, the full amount of $1,649.78. If we include the $101.46 paid December 23, 1913, the amount paid, together with that tendered June 26, 1916, amounts to $150.56. Ten per cent. of the amount due on that date is $175.12. Adding the amount paid to the amount tendered, it is clear that appellee had not paid and tendered 10 per cent. of the "balance due" on June 26, 1916.

"A debtor must tender the entire sum due, and nothing short of an offer to fully perform by a tender of everything the creditor is entitled to receive is sufficient." Hunt on Tender, § 186.

"It has been decided repeatedly, where a man does not know exactly what is due, he must, at his peril, take care to tender enough. A mistake in tendering an amount less than the sum due is the misfortune of the tenderer, and cannot have the same legal effect as a tender of the full amount due. The general rule is that the amount of the deficiency does not make any difference. Where the amount tendered was 41 cents short of the amount due, the tender was held bad. So where the amount due was $649.-44, and the deficiency was 70 cents, the tender was held not good." Hunt on Tender, § 195; 38 Cyc. 137; 3 Elliott on Contracts, § 1960; 28 A. & E. Enc. of Law, 17.

[3] There is some conflict in the authorities concerning the right of the tenderer to the release when the tender is made after maturity of the debt and before suit to foreclose is instituted. In Chrisman v. Hay (C. C.) 43 Fed. 552, it is held that, although the debt has matured, the tender may be made at any time before suit is begun. The following authorities hold that the privilege cannot be exercised after maturity of the debt and default. Reed v. Jones, 133 Mass. 116; Verner v. Tuch, 52 Hun, 269, 5 N. Y. Supp. 219; Clarke v. Cowan, 206 Mass. 252, 92 N. E. 474, 138 Am. St. Rep. 388; Brown v. Cleveland Trust Co., 30 Ohio Cir. Ct. R. 364; Fulton v. Jones, 167 App. Div. 765, 153 N. Y. Supp. 87; Baldwin v. Benedict, 111 Iowa, 741, 82 N. W.

956; 1 Jones on Mortg. p. 1051; Woodburn v. Gannon, 36 N. J. Eq. 69.

In Chrisman v. Hay, supra, in discussing the right of Mrs. Hay to redeem after maturity of the debt, the court said:

"It now appears that she is no longer endeavoring to carry out her contract with complainants. The payments are largely in arrears, and the case is ripe for a foreclosure and sale. Under such circumstances it would work a fraud upon the rights of complainants if it were held that the mortgagor, while wholly in default on her part, should be permitted to select out the more valuable lots from the mortgagor's tract, and redeem them, leaving the less valuable unredeemed."

Under the common-law rule a tender must be made before suit is filed where no time is fixed for payment. 3 Elliott on Contr. § 1963; 38 Cyc. 149, d.

"The common-law rule that a tender cannot be made after a default has been changed in some states by statute or by the decisions of the court of last resort. In case of money demands, where the amount is liquidated or capable of being made so by mere computation, and the damages are merely the interest, the rule that a tender may be made after a default is now almost if not wholly universal. And where such a rule obtains a tender of the amount due, with interest to date, may be made at any time before suit, except in cases where time is of the essence of the contract and the circumstances will not warrant a court of equity in relieving the party from the consequences of his default." Hunt on Tender, § 281.

We think this rule has been adopted in this state and is applicable to the instant case. Pell v. Chandos, 27 S. W. 48; Bolton v. Gifford, 45 Tex. Civ. App. 140, 100 S. W. 210.

[4, 5] That construction should be given a contract which will harmonize and give an interpretation to each clause consistent with the meaning of the rest of the. instrument. Hearne v. Gillett, 62 Tex. 23. Clarke v. Cowan, 206 Mass. 252, 92 N. E. 474, 138 Am. St. Rep. 388, is a case involving the construction of a contract in many features similar to the one under consideration. Morton, J., said:

"Moreover, it was, we think, a privilege to be exercised before the mortgage debt became due according to the terms of the mortgage. Until that time, except for some such arrangement, the mortgagee would not have been bound to accept any payment which the mortgagor might desire to make, and when the debt became due there was no longer any necessity for the continuance of the agreement, since the mortgagor could pay or tender the entire amount due and the mortgagee would be obliged to accept the same. Any other construction would, we think, be inconsistent with the provisions of the mortgage."

According to the terms of the notes and the extension agreement, the notes were payable absolutely in full on June 28, 1916. Appellant had the right to demand payment of the entire amount due, and in the event of Elliott's default to foreclose the lien on all the land. If we should hold that appellee had the right at that time to pay one-tenth of the debt and demand a release of a proportionate part of the land, then we have placed such a construction upon the instru-

ments constituting the contract as will bring about a repugnancy in their terms and a conflict between the rights of the parties to it. He cannot be forced to pay it all, and on the same day have the option of paying only one-tenth. If the contract obligates appellee to pay in full at maturity or surrender all the land, then he cannot claim the privilege of paying less and demanding a release of any of the property at the same time. The promise to pay the debt in full, secured by the lien on the land, is the primary and principal obligation of appellee. His right to pay less and obtain a partial release is a collateral assurance inserted for his benefit, and should not be enforced, if the contract is strictly construed, when he is in default and his hands are not clean. Since appellant did not see fit to sue at once upon maturity of the debt, equitable considerations prompt us to also extend the privilege until appellant, by suit, demands the whole of his debt, though we incline to the opinion that his option is terminated by maturity of the debt.

We deem it unnecessary to consider the remaining assignments, though some of them present interesting questions. We think our construction of the contract harmonizes its otherwise conflicting stipulations, and because tender of one-tenth of the debt was not made before suit filed, the judgment is reversed, and here rendered that the appellant recover the full amount of its debt, with a foreclosure of the vendor's lien upon all of the land described in the deed.

Reversed and rendered.

HUFF, C. J., not sitting.

BOYCE, J. While I concur in the disposition made of this case, I am not prepared to concur in the reasons assigned by Judge HALL for the conclusions reached.

The provision for a partial release is a part of the very terms of the instrument that creates the lien itself. By the terms of the deed a lien is "retained * * * until" the indebtedness is "fully paid, * * * except that vendor agrees to release such a proportional part of said land, when payment shall be made, amounting to not less than one-tenth of the balance due." There is no express limitation on the life of the exception. Why should it not exist so long as the lien itself exists, and that would be "until" the indebtedness was "fully paid," or the lien foreclosed. When we hold that the exception ends with the maturity of the indebtedness and while the lien still exists we read something into the contract that is not in it. It does not appear to me that the exercise of the right to secure a partial release, after the maturity of the indebtedness, is inconsistent with the duty to pay all of the indebtedness at such time. The parties to the contract may limit the lien in such way as they may see fit. The right granted is to se-

cure the release of a part of the land and the part payment is a mere condition of the exercise of this right, and the contract does not provide that the maturity of the indebtedness shall put an end to this right. The exercise of the right after maturity does not in any manner limit plaintiff's liability for the payment of the balance nor the right of the mortgagee to enforce the same against the unreleased portion of the land, and through execution against other property. The mortgagee is in no better or worse position whether the release is secured before or after maturity of the indebtedness. I am of the opinion that, as the contract provides for a partial release on partial payment and contains no limitation as to when the right to secure a partial release must be exercised, it will continue as long as the lien continues. As I understand the decisions, the weight of authority supports this conclusion. The Massachusetts decisions and the federal court decision cited by Judge HALL are the only courts whose decisions I have read that directly hold that, in the absence of something in the face of the mortgage or notes limiting the time within which the right to secure a partial release must be exercised, such right may not be exercised at any time before foreclosure. The rule was established in Massachusetts in the leading case of Reed v. Jones, 133 Mass. 116, by a divided court. In the New York cases the contract in each instance contains special provisions which the court held to have the effect of showing that it was the intention of the parties to limit the time within which the release might be secured. The following cases hold that, where the contract provides for a partial release on part payment and contains no limitation of time within which the right is to be exercised, it continues until the lien is foreclosed. American Net & Twine Co. v. Githens, 57 N. J. Eq. 539, 41 Atl. 405; Vawter v. Crafts, 41 Minn. 14, 42 N. W. 483; Commercial Bank v. Hiller, 106 Mich. 118, 63 N. W. 1012; Gammel v. Goode, 103 Iowa, 301, 72 N. W. 531.

The provision for release does not specify the particular land to be released nor how it is to be selected. Some authorities hold that such provision is void for uncertainty. McCormick v. Parsons, 195 Mo. 91, 92 S. W. 1162; Hanna v. Palmer, 61 N. E. 1051. Under the decisions of this state the grantee of the right would have the power of selection (Oxsheer v. Watt, 91 Tex. 124, 41 S. W. 466, 66 Am. St. Rep. 863), and the grant would not fail for uncertainty, provided the instrument was sufficiently certain as to the rule that must be followed in making the selection of a proportional part of the land. Does the provision for release of a proportional part of the land mean proportional in area, or proportional in value? The proportion may be with reference to either, and if the instrument is so ambiguous as that it cannot be

determined which was meant, then it could not be given effect. There are good reasons for holding that the parties might have intended to have the proportion determined in either way. There would be less difficulty in carrying the provision into effect under the power of selection if the proportion is regarded as applicable to area, because the grantee would then only have to designate the particular part of the land constituting the proportional part to which he desired release, while, if the proportion has reference to value, differences of opinion might arise as to the relative value of different parts of the land, which could only be settled by a judgment of court, and the power become impossible of being given effect except through the courts. On the other hand, it would hardly seem probable that the parties intended to place an arbitrary power of selection in the hands of the party granting the lien that might be used to destroy or impair the relative value of the security. It seems to me to be rather evident that the parties only intended by the provision in question that the value of the security should be reduced in proportion to the reduction made by the payment of the indebtedness constituting the lien. If this be the intention of the parties, then such intention could only be effected by holding that the proportion of the land to be released is to be determined by its value, rather than its area.

In the case of State v. Commissioners of S. & U. Land, 34 Wis. 162, a law donating public lands to aid in the construction of a canal provided that as a certain proportion of the work was completed the Governor should certify the proportion of said lands the donee had become entitled to in consideration of the work done, who should thereupon be entitled to patent to "said proportion of said lands as selected" by the donee, and the question in the case was as to the meaning of "proportion" as thus used. The question was discussed at some length, and the difficulty with reference to selection, if the proportion was to be determined in value, was considered by the court, but was held not to be controlling, and the court held that the proportion was to be determined with reference to value rather than area in such case.

If it can be said that the meaning here is not ambiguous, I am inclined to think that it should be construed as authorizing a release of a proportional part in value of the lands upon payment of such proportion of the indebtedness. The record shows that since the execution of the note sued on the defendant had erected improvements of the value of $3,000 on the half acre of land which was sought to be released. It was also shown that the remaining 4½ acres of land was worth between $200 and $250 per acre. The improvements became a part of the realty and subject to plaintiff's lien, and of course, if value is to be taken into consideration in determining the proportion, defendants are not entitled to a release of this one-half acre. I am therefore of the opinion that the judgment should be reversed and rendered for the plaintiff for this reason.