**TAYLOR v. HEMPHILL et al. (No. 6411.)**[*]

(Court of Civil Appeals of Texas. Austin. Jan. 25, 1922. On Rehearing, March 1, 1922.)

**1. Tender** ⊙ **13(1)—Certified check is good tender.**

A tender by certified check payable to the creditor is good.

**2. Action** ⊙ **48(1)—Claim for amount guaranteed purchaser of pledged cotton held properly joined in pledgee's cross-bill.**

In an action for possession of pledged cotton, where plaintiff tendered pledgee all sums owing it, the pledgee's cross-bill included all sums it claimed was due it by plaintiff, claim for an amount paid a purchaser for loss of weight in cotton sold by pledgee was properly joined with the other items in its cross-bill.

**3. Pledges** ⊙ **29—Weight of cotton sold by pledgee bank's president held to have been guaranteed by him on bank's behalf with pledgor's knowledge.**

A pledgor of cotton who requested the pledgee, a bank, to sell a part and guarantee the weights to the purchaser, could not avoid liability to the bank for the amount paid the purchaser and charged against pledgor's account for shortage in weights on the ground the guaranty was made with the president of the bank personally, his acts being done in be-

⊙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction April 12, 1922.

half of the bank, which was bound thereby, of which facts plaintiff knew.

**4. Banks and banking ⬅⟳99—Pledges ⬅⟳29— Guaranty of weights of pledged property sold held not ultra vires.**

A bank's act in guaranteeing the weights of pledged cotton sold by it is incidental to realization on its security, and is not ultra vires, and hence it is entitled to reimbursement from pledgor for an amount paid to the purchaser for loss of weight.

**5. Banks and banking ⬅⟳101—Pledgor held precluded from claiming that pledgee bank's guarantee of weight of pledged cotton sold by it was ultra vires.**

A pledgor of cotton sold by pledgee, a bank, with full knowledge by pledgor of the terms of the purchaser's offer, which required the bank to guarantee the weights, was precluded from urging that such guaranty was ultra vires so as to defeat the bank's claim for reimbursement for the amount paid the purchaser for loss of weight.

**6. Evidence ⬅⟳334(5), 383(4)—Certificates of public weigher as to excess moisture in cotton admissible to establish shortage in weight and prima facie evidence.**

Under Acts 36th Leg. (1919) c. 76, § 8, authorizing the Commissioner of Markets and Warehouses to prescribe forms of weight certificates by public weighers, a certificate in the form prescribed by a ruling of the Market and Warehouse Department, as to the amount of excess moisture in cotton sold by a pledgee, was admissible to establish its claim for an amount paid the purchaser for loss of weight, and was sufficient to prima facie establish the shortage, though the statute did not require such data.

**7. Pledges ⬅⟳29—Certificate of weights according to standard selected by parties held admissible and conclusive.**

Where a pledgor of cotton agreed that pledgee should sell a part and guarantee the weights according to Brownwood Compress weights, a public weigher's certificate as to the amount of excess moisture, according to such weights, was admissible to establish pledgee's claim for reimbursement for the amount paid the purchaser for loss of weight and at least prima facie conclusive, irrespective of the Market and Warehouse Department's authority to require such data.

#### On Rehearing.

**8. Tender ⬅⟳29 — Whether tender of full amount due was valid and unconditional held for jury.**

In an action for possession of pledged cotton, whether plaintiff made a valid and unconditional tender of the full amount due with interest, so as to bar recovery of interest on the amount tendered, or whether his tender was on condition that pledgee waive or surrender its claim for reimbursement for the amount paid a purchaser of part of the cotton for a loss of weight, *held* for the jury.

**9. Interest ⬅⟳50 — Tender to stop interest must be unconditional and of entire sum due.**

To stop the running of interest, the debtor must tender the entire sum due, unless he owes two or more debts, especially where one is secured by a mortgage or pledge, in which case the debtor may tender payment of the secured debt only, but such offer cannot be conditioned on the creditor's surrender of his remaining claims.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by F. Wal Taylor against C. W. Hemphill and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded in part and affirmed in part.

Snodgrass & Dibrell, of Coleman, for appellant.

Baker & Weatherred, of Coleman, for appellees.

BRADY, J. Appellant filed this suit for the recovery of the possession of 75 bales of cotton, which he alleged had been pledged to Central State Bank of Coleman, Tex., to secure certain sums of money advanced to him by the bank to purchase the cotton. He alleged a tender of all the money due, which was secured by a lien on the cotton, and a demand of possession of same, and the refusal by the bank. In addition to the bank, C. W. Hemphill and others were named as defendants, upon the ground that they were setting up some claim to the cotton.

All the defendants filed disclaimers except Central State Bank and Richardson & Co. The answer of the bank consisted of general exceptions, general denial, and a cross-bill against the plaintiff and the sureties on his replevy bond and sequestration, asking judgment in the sum of $12,837.08. Richardson & Co. filed a general denial and specially adopted the answer and cross-bill of the bank.

Among the items set up by the bank in its cross-bill was one for the sum of $258.29, which it was claimed arose out of the loss of weight in 100 bales of cotton sold by the bank for the account of appellant to W. L. Ellis & Co., and which it was alleged the bank, at the instance and request of appellant, guaranteed to the purchaser.

The court gave a peremptory instruction to find for the bank on its cross-action in the sum of $13,974.57. It is conceded by both sides that this amount was arrived at by the trial court in the following manner: $12,972.09 as the amount tendered and deposited in court by appellant on the trial; the further sum of $258.29, the item above referred to, arising out of the sale to W. L. Ellis & Co., which two sums aggregated $13,-238, and which, with interest thereon from December 20, 1919, the date of appellant's

---

⬅⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

original tender, at the rate of 6 per cent. per annum aggregated the total sum of $13,-974.57.

The court rendered judgment in favor of the bank against appellant on the 27th day of November, 1920, for the sum of $13,974.-57, with interest at the rate of 6 per cent. per annum from that date, and all costs of the cross-action. The judgment further provided that the sum of $12,972.09, paid into the registry of the court on the tender of appellant, should be applied and credited upon the judgment in favor of the bank. It was further provided in the judgment that the bank take nothing on its claim and prayer for damages alleged to have arisen from its failure to deliver the cotton described in the plaintiff's petition to the defendants Richardson & Co., and that it recover nothing against the sureties on the sequestration bond. The judgment awarded the plaintiff the 75 bales of cotton as against the bank and Richardson & Co., and disposed of all other parties and issues.

We will first examine the questions presented by appellant's contention that the court erred in peremptorily instructing the jury to return a verdict for the amount above stated, because such amount necessarily included compound interest, which was not authorized by law; and for the further reason that it included interest upon the amount originally tendered by appellant in satisfaction of the lien claims against the cotton sued for, which was not authorized, because the tender was sufficient to stop interest. We have decided to sustain both these propositions, and will briefly indicate our reasons.

It is more than once asserted in appellant's brief, and not denied by appellees' counsel, that the amount of the tender by appellant on December 20, 1919, included not only the principal of the various items in the bank's account, which were admitted by him to be due and a lien on the cotton, but also interest on the several items. This being true, it would appear obvious that an allowance of interest on the whole sum tendered, from date of tender to the date of judgment, was to award interest upon interest. Such allowance does not appear to rest upon any legal principle of which we are aware, nor have we been directed to any part of the record which shows that the contract of the parties contemplated any such recovery. The mere fact that appellant had made a tender of such amount would not authorize the compounding of interest. If the tender was legal and sufficient, it stopped all interest thereon. If it was insufficient to constitute a valid tender, then appellant's liability would be the same as if no tender had been made; that is, the principal sums due and interest thereon.

As to the sufficiency of the tender made by appellant on December 20, 1919, to stop the running of interest, it is not contended here by either party that this amount was incorrect or insufficient as to the sums due by appellant to the bank at that date, in so far as the bank's lien against the 75 bales of cotton is concerned. The sole controversy here is over the matter of interest on that sum and the further item of $258.29 relating to the transaction with Ellis & Co. Now, it must be remembered that the primary purpose of appellant's suit was to recover the possession of, and to discharge the pledge lien on, his cotton; and that, for such purpose, he had made a tender prior to suit of what he claimed was due against that cotton. We do not think it admits of argument that he was entitled to have his cotton released and returned to his possession, if he in fact made a valid and sufficient tender, without being required to tender any additional amount claimed or actually due to the bank upon other and independent transactions.

[1] The question then is, was the tender a legal and sufficient one? The statement of facts shows that the tender was by a certified check, payable to Central State Bank and drawn on the Coleman National Bank, signed by appellant, and certified to by the cashier of the Coleman National Bank. Appellant and also the cashier of the drawee bank testified that the certified check was tendered to appellee bank, and the cashier testified that if it had been accepted and presented it would have been paid. Mr. Hemphill, president of the Central State Bank, testified that the certified check was tendered to him, but denied that he had agreed to accept the check as money. He further testified, however, that when the check was tendered him by appellant, he refused to accept it because it did not represent the full amount due the bank. He did not claim that he refused to receive the certified check because it was not the equivalent of money or because a technically legal tender had not been made, but for the sole reason that it was not the full amount due the bank. The certified check was upon another local bank and would have been paid upon presentation. In these circumstances we think the objection that the tender was not a legal one was waived and the tender was good so far as the medium of payment was concerned. 38 Cyc. 1460. It thus appears that appellant made a legal and sufficient tender, both as to the medium of payment and as to the amount due at the time upon the cotton which was secured as a lien. His right being to have his cotton released and surrendered upon tender of the amount due thereon, the objection of the bank that there were other sums due and owing to it was ineffectual to vitiate the tender for that purpose. The result, in our opinion, was that all interest was immediately stopped upon the making

of the tender as to the secured debts, and, appellant having made good his tender by depositing the amount in the registry of the court, it was error for the court to instruct the jury to award interest on such amount and to render judgment therefor.

There remains to be considered appellant's objections to the item of $258.29, which was included in the total amount of the instructed verdict and in the judgment. It is claimed that it was error to include such amount, because (a) there was a misjoinder of actions in the bank's cross-bill, in that such item was improperly joined with the other items, which were a lien on the cotton sued for; (b) the indebtedness, if any at all, was personal to C. W. Hemphill and was not a claim of the bank; (c) that the transaction, if made by the bank, was ultra vires and void; and (d) because the evidence was insufficient to establish this item.

We will consider these objections in their order.

[2] There is no misjoinder of actions here, because appellant not only sued to recover the possession of his cotton, but also tendered to the bank all sums of money owing by him to the bank. He thus tendered the broader issue of a satisfaction of his indebtedness to the bank, and the cross-bill of the latter included all sums of money which it claimed was due it by appellant. Independently of all other considerations, the relation between the issues sought to be litigated by the bank and those tendered by appellant justified joinder of the item in question.

[3] As to the claim that this transaction was one made personally with C. W. Hemphill, if at all, the record indisputably shows that it was a transaction by the bank. In the testimony in its behalf it was shown that appellant requested the bank to and agreed that it should sell the 100 bales of cotton to W. L. Ellis & Co., and that it should guarantee the weights to the purchaser according to Brownwood Compress weights. The evidence shows that appellant was to reimburse the bank for any amounts paid to Ellis & Co. by reason of shortage in weights. There is no dispute that the bank actually paid out this amount for the account of appellant, and it was charged against him in his account with the bank. In at least one place in the statement of facts we have found where appellant expressly admitted that this cotton was sold for him by the bank. Hence we conclude that the transaction was not personal to Mr. Hemphill, although effected through him. His acts were done in behalf of, and were binding on, the bank, which facts the evidence shows were fully known to appellant.

[4] Upon the claim of ultra vires, we think there are at least two answers to the contention. It is stated more than once in appellees' brief that the bank had a pledge lien on the 100 bales of cotton sold for appellant's account to Ellis & Co., and this is not denied by appellant. Indeed, the record affirmatively seems to support this statement. The proceeds of this sale were applied to the extinguishment of the bank's lien on the cotton. Hence, the guaranty of the weights was a matter incidental to the realization upon its security by the bank, and cannot be regarded as ultra vires.

[5] But, if we should be mistaken in this view, we do not think it lies in the mouth of appellant to make the claim, under the facts of the case. His own testimony shows that he was fully apprised of the terms of the sale and of the fact that the bank was required to guarantee the weights according to Brownwood Compress sheets or certificates, and what was done was with his consent, if not at his instance and request. In these circumstances we think he is precluded from urging the claim of ultra vires, even if it were tenable.

[6] There remains to be discussed the claim that there was no evidence showing the shortage in weights making up the item in question. To prove this fact, the bank introduced the certificates of the public weigher showing the Brownwood Compress weights. It is claimed for appellant that these certificates are not only unauthorized by law, but that they are in the face of the statute. Acts 36th Legislature, Regular Session, c. 76, § 8. An examination of this statute shows that the Commissioner of Markets and Warehouses is required to prescribe the form of weight certificates to be used by all public weighers in this state. It requires the certificate to show certain facts, including the total weight of the produce. It also provides that "no certificate other than one herein prescribed shall be used by any weigher." The certificate, when so made and properly signed, is made prima facie evidence of the weight. The certificates in this case show that, in addition to stating the total weights, there is a column in the certificates showing a deduction of a small number of pounds in certain bales because they were wet and damaged. This shortage is what makes up the total of the item under consideration. It seems to have been authorized as a statement in the official certificate by a rule passed by the Market and Warehouse Department in force at the time of this transaction. Under rule 6 public weighers were instructed to state in their certificates the amount of excess moisture contained in any bale of cotton weighed. We are of the opinion that for two reasons the court did not err in admitting the weight sheets in question, and that this evidence was sufficient to prima facie establish the shortage in weights. In the first place, the statute authorizes the Commissioner of Warehouses and Markets to prescribe forms. While cer-

tain things are by statute required to be placed in the official certificates, a fair construction of the statute would seem to authorize the department to prescribe additional relevant data intended to prima facie establish the correct net weights. When such regulations are made, they have the force of law and are of the same dignity as the matters specifically mentioned in the statute. Hence we conclude that the data in question was a part of the official certificate, and was not only not prohibited by the statute, but was authorized thereby.

[7] But in addition to this reason, we think the evidence was admissible and conclusive upon the parties, at least prima facie, because the standard selected by the parties themselves was the weights as shown by the Brownwood Compress certificates. They having agreed that these should govern, they were admissible, no claim being made against their genuineness, since they purported to be officially made and in the customary manner.

All assignments of error relating to the item of $258.29 are overruled, but the judgment will be reformed so as to exclude the allowance of interest on the sum tendered by appellant. As thus reformed, the judgment will be affirmed.

Affirmed.

## On Rehearing.

Both sides have filed motions for rehearing. We have decided to overrule appellant's motion, and to sustain that of appellees, and will briefly indicate our reasons.

[8] In the original opinion we held that the court erred in peremptorily instructing the jury to return a verdict for appellee bank, in so far as it included interest upon the amount tendered by appellant, and that the judgment should be reformed so as to exclude such interest. We are now convinced that this was error. To justify that conclusion, it would be necessary to hold that, under the undisputed facts, appellant had made a valid and unconditional tender of the full amount due the bank on the indebtedness which was secured by a pledge lien on the cotton. A closer scrutiny of the facts of record convinces us that we cannot justly make this conclusion.

There seems to be no dispute that appellant tendered the correct amount of the secured debt, and we have no doubt that the tender was valid as to the medium of payment. However, we think the evidence raised an issue of fact for the determination of the jury as to whether or not the tender made by appellant was unconditional. The testimony of appellant himself leaves it very doubtful whether he made the tender without condition and for the sole purpose of releasing the lien on the property or securing its possession. He was interrogated at length, as a witness, upon this issue, and he nowhere stated that he offered to pay the bank the full amount of such debt, with interest, leaving the disputed item of $258.29 for future adjustment or litigation. Indeed his testimony is susceptible of the inference that he made this tender only upon condition that the bank would waive or surrender its claim to the remaining item. The testimony of Mr. Hemphill is to the effect that appellant contested the bank's right to the $258.-29, and he denied that appellant was willing to pay the whole amount, less such item. His testimony is to the effect that appellant tendered the check in full payment of the entire indebtedness, and that he refused to accept it for the bank in full settlement. Indeed, Mr. Hemphill stated that his sole reason for refusing to accept the check was that it did not represent the full amount due the bank, and that he so apprised appellant. In this state of the evidence, we think the question was one of fact and a disputed issue. In view of the probability of another trial, we will, for the guidance of the trial court, state the rules of law which we regard as relevant to the above question.

[9] The general rule is that, in order to stop the running of interest, the debtor must tender the entire sum due. If he should tender less the creditor is justified in refusing the tender, and if the ultimate fact be established that the amount offered was insufficient interest will not be abated. Schwantkowsky v. Dykowsky (Tex. Civ. App.) 132 S. W. 373; Barreda v. Merchants' Nat. Bank (Tex. Civ. App.) 206 S. W. 726; California State Life Ins. Co. v. Elliott (Tex. Civ. App.) 193 S. W. 1096; 38 Cyc. 137; 22 Cyc. 1557; 5 A. L. R. 1230, note Sec. IV.

This rule, however, does not obtain in a case where a debtor owes two or more distinct and separate debts, especially where one of the demands is secured by a mortgage or pledge of property, which the debtor wishes to redeem or to secure a release of the lien. In such instances the debtor may make a tender of payment of the secured debt without reference to the unsecured claims; but the offer must be unconditional. It cannot lawfully be conditioned upon the surrender by the creditor of his right to claim the remaining demands. 7 Cyc. 88 E. 1, 2; 38 Cyc. 140, A. 5, B, 1; Hunt on Tender, §§ 200, 201.

If the evidence should be the same on another trial, these legal principles will be applicable to an appropriate submission of the issue.

Upon the motion of appellant, we think it sufficient to say that the court properly instructed a verdict for the item of $258.29 for the reasons indicated in the original opinion. It may be added that appellant's own testimony is to the effect that, with full knowledge of the terms and conditions of the

offer, he authorized the bank to sell the cotton to Ellis & Co. This authority included, in our opinion, the right of the bank to make the adjustment with the purchasers for the shortage in weight as shown by the Brownwood Compress Certificates. This transaction was but the final adjustment with the purchasers upon the question of weights which was substantially authorized by appellant, and the bank was entitled to reimbursement. The fact that appellant subsequently questioned its authority can have no effect, in view of his own testimony as to that which he authorized to be done in his behalf.

The former judgment of this court will be set aside in so far as it reformed the judgment below so as to exclude the interest on the tender made by appellant, but the judgment will be reversed and the cause remanded for the trial of that issue. In all other respects the judgment will be affirmed.

Reversed and remanded in part, and in part affirmed.