Wheeler, J.
It is insisted on behalf of the appellee that the court erred—
*15 1st. Ift excluding the evidence offered to prove the defendant's joint interest •with the deceased in the lands in controversy.
2d. In refusing to admit in evidence the petition and order of sale of the-Prohate Court of Gonzales county.
1. The .only evidence offered by the defendant to establish the title asserted, by him was the statement of a single witness that he heard the deceased say that the defendant was jointly interested with him in the lots. It is well settled that where one buys land in the name of another and pays the purchase-money, the land will be held by the grantee in trust for him who pays the money. “The clear result of all the cases, without a single exception, (says Story,) is that the trust of the legal estate — whether freehold, copyhold, or leasehold; whether talcen in the name of the purchaser and others jointly, or in the name of others without the purchaser; whether in one name or several; whether jointly or successively — results to the man who advanced the purchase-money. This is the general proposition supported by all the cases.” (2 Story Eq., sec. 1201, n. 2, a.)
Whether after the death of the nominal purchaser parol evidence alone is-admissible to establish the trust against the express declaration of the deed, has been a subject of controversy, but it is now settled that such proof is admissible. (Ib., 10 Ves. R., 611; 1 Johns. Ch. R., 582; 2 Id., 404; 3 Johns. R., 216; 3 Binn. R., 302.) In Lench v. Lench, (1 Ves. R.. 511,) the master of the rolls said: “Whatever cjoubt may have been formerly entertained upon this subject, it is now settled that money may in this manner be followed into-the land in which it is invested, and a claim of this sort may be supported by parol evidence.” The same doctrine was maintained by Chancellor Kent, in Boyd v. McLean, after a careful review of the authorities and an elaborate examination of the subject. (1 Johns. Ch. R., 582.)
But the question hero is not simply whether parol evidence is admissible, but whether the naked declaration of the deceased, of itself and without proof' of the payment of the purchase-money. is sufficient to establish title in the defendant. And wo are of opinion that it is not. It was so ruled by Chancellor Kent iu the case last cited. lie there said : “The eases uniformly show that the courts have been deeply impressed with the danger of this kind of proof' as tending to perjury and the insecurity of paper title, and they have required the payment of the cestui que trust to be clearly proved. In the ease of Lench v. Lench, Sir William Grant did not deem the unassisted oath of a single witness to the mere naked declaration of the trustee admitting the trust as sufficient; and there were no corroborating eireumsfancesin the ease. He thought the evidence too uncertain and dangerous to be depended upon.” (Id., 590.)
Here there was but the oath of a single witness to the naked declaration of' the deceased that the defendant was jointly interested with him in the land; and we are of opinion that this was not competent evidence to establish title in the defendant, and that therefore it was rightly excluded.
It is insisted by the appellee that, as matters of trust are peculiarly cognizable-in a court of equity, and as a mere equitable defense resting in a parol cannot be set up so as to defeat the legal title of the plaintiff in an action of ejectment at common law, this defense cannot be set up in the present case, though supported by competent evidence. We think otherwise. In our own jurisprudence there is no division of jurisdiction into common law and chancery. We have not two rules by which to administer justice in the same case, nor two-modes of applying the rule to the same rights, attaining different results. But the same rule and measure of justice are applied to the same rights whenever drawn in litigation, administered according to the principles of that forum by which may be most effectually attained the equity as well as the law of the particular case. Our courts are not restricted by the rules which limit and define the jurisdiction of courts of common law and chancery in England and' these States whose laws recognize two separate jurisdictions, each ad *16 ministering justice according to its own peculiar forms and rules of procedure. Whatever 'may be the rights of a party recognized by law here, whether equitable or legal, they may be asserted in our courts without regard to those distinctions.
In Pennsylvania it is held that, as there is no court of chancery, an equitable title may be interposed to the plaintiff’s right to recover in an action of ejectment, (12 Pet. R., 11; 1 Wash. C. C. R., 322;) and we have no doubt that iiere an equitable title may be interposed to the plaintiff’s right to recover in an action like the present.
2. The petition of the administrator for the sale of the lands in question and the order of the Probate Court thereon bear date in June, 1841. The petition asked an order to sell at Seguin, a place other than the county seat; and although the order does not in express terms direct the sale at Seguin, yet, taken in connection with tire petition, it is to be considered an order to sell at that place. It evidently was so understood by the administrator and so intended by the Probate' Court. The evidence was excluded upon the sole ground that the Probate Court had no authority to order the sale at a place other than the county seat. It therefore becomes material to determine whether the Probate Court iiad authority to make the order in question.
The act upon which the appellant relies to support the authority of the Probate Court to order the sale at Seguin is “an act to regulate public sales,” approved January 21, 1841, which provides that all sales by sheriffs, constables, administrators, &c., “may be held at the residence of the owner of the property or at the late residence of a deceased person, or at any other place by consent of the parties interested which will he most advantageous to the sale of (he property: Provided, That real estate and slaves shall be sold at the courthouse of tlie respective counties, unless an order of the court be had to sell at some other place.” (5 Stat., p. 66.)
This statute, by clear and necessary intendment, gives to the Probate •Court the authority to order a sale of lands and slaves elsewhere than at the conrt-liouse of the county. But it is insisted that the provision giving that .authority was virtually repealed by a statute passed at a subsequent day of the same session. The latter act is entitled “An act to regulate sales by judgment •or decree of a Probate Court or a court of chancery,” was approved on the 4th •day of February, 1841, and enacts “ that all sales, whether by order, judgment, •or" decree of any Probate Court or court of chancery, shall be regulated and .governed by the laws governing sales under execution; and all laws which relate to sales under execution shall he applicable to such sales as above stated, .and that this act shall take effect and be in force from and after its passage.” (5 Stat., 179.)
These statutes, being in pari materia, and relating to the same subject, are to be taken together and so construed, in reference to each other, as that, if practicable, effect may be given to the entire provisions of each. This, it is conceived, may he done by considering the former, as it evidently was intended, as a law “ governing sales under execution.” It is to be considered as if incorporated with and as constituting a part of the laws enacted upon that subject. When, therefore, the latter statute declares that “all sales by order of any Probate Court or court of chancery shall be regulated and governed by the the laws governing sales under execution,” we must refer for the rule of pro■cedure to the existing laws upon the subject of such sales; and among them we find the act first above cited of the 21st of January, 1841, which gives to •the court the authority to order the sale at a place other than the court-house.
Thus considered, there is no repugnancy between the provisions of these statutes. They may stand together, and effect may he given to the entire provisions of each'. And thus to'constrne and give effect to them is in accordance •with the established rule of construction. (1 Kent Comm., 463.)
Note 4. — McCoy v. Crawford, 9 T., 353; McAlister v. Farley et al., 39 T., 552. Parol evidence is .admissible to establish a trust. (Mead v. Randolph, 8 T.,19L; Miller v Thatcher. 9 T.,482; Me- ’ Clennyu. Floyd, 10 T., 159; Vandeverv. Freeman,20 T., 333; Cuneyu Dupree, 21 T., 211; Grooms •V. Rent, 27 T., 231; Ruffierv. Womack, 30 T., 332; Gibbs v. Penny, 43 T., 560.)
Note 5. — Miller v. Thatcher, 9 T, 482; Hodges v. Johnson, 15 T., 572.
Note 6. — Easterbury v. Blythe, 7 T., 210; Miller v. Alexander, S T., 36; Wright v. Thompson, .14 T., 501; Scarborough v. Arrant, 25 T., 129; Viser v. Rice, 33 T., 139; Walker v. Howard, 34 T., 478.
Note 7. — -Jamison u. Gaston, 21T., 266.
The object oí the rule is to ascertain and carry into effect the intention of ■the Legislature, and it proceeds upon the supposition that the several statutes ■relating to one subject were governed by one spirit and policy, and were intended' to be consistent and harmonious iu their several parts and provisions. It would not be a reasonable mode of construing the acts of the Legislature so to construe them as to make one act repeal another passed at the ■same session. It cannot be supposed that it was their intention that acts ■thus passed should abrogate and repeal one another. A construction which repeals former statutes and laws by implication is not to be favored in any •case. (3 Hill (N. Y.) R., 472.) Statutes are not considered to be repealed by implication unless the repugnancy between the new provision and the former ■statute be plain and unavoidable. (1 Kent Comm., 466, n. b.)
Since, then, the act of the 21st of January, conferring upon the Probate ■Court the authority to order a sale of lands elsewhere than at the court-house, ■was not repealed by the subsequent act of the 4th of February, there can be no doubt of the validity of the order to sell at Seguin.
The order did not of itself amount to proof of a sale. The mere order of ■sale without proof also of a legal and valid sale under it could not divest the title of those claiming under the deceased; nor could it of itself afford any ■evidence that the title had passed out of his representatives. (3 How. R., 750.) Yet it was a fact admissible in evidence as laying the foundation for the introduction of other evidence of the alleged sale. But the ruling of the court in excluding it effectually precluded the defendant from introducing such other ■evidence as he may have had it in his power to adduce to establish the fact of ■ a sale. The evidence offered, though it did not amount to proof of the fact, was still a necessary ingredient in that proof. It constituted an indispensable link in the chain of evidence, and the court erred in excluding it; for which the judgment must be reversed and the cause remanded for further proceedings.
Judgment reversed.