MRS. ROSA ALLEN WILLIAMS, EXECUTRIX, v. HARRIS COUNTY HOUSTON SHIP CHANNEL NAVIGATION DISTRICT.

No. 7036.   Decided December 2, 1936.
Rehearing overruled January 6, 1937.
(99 S. W., 2d Series, 276.)

C. A. Leddy, C. R. Wharton, Fulbright, Crooker & Freeman, and Baker, Botts, Andrews & Wharton, all of Houston, for plantiffs in error.

The Court of Civil Appeals has erroneously held that the payment by the Navigation District to the Improvement Company of the purchase price of the tract of land it acquired from the Improvement Company and the acceptance by Mrs. Allen of a portion of this money from the Improvément District entitled the Navigation District to a release of the lien she retained in her deed to the Improvement Company and that her executrix is estopped from asserting this lien. Proctor v. Marshall, 18 Texas, 63; Cooper Grocery Co. v. Strange (Com. App.), 18 S. W. (2d) 609; Cain v. Vogt, 139 Iowa, 631, 116 N. W., 786; Standard Oil Co. v. Day, 161 Minn., 281, 201 N. W., 410.

H. F. Montgomery, Geo. D. Sears, D. A. Simmons, Geo. C. Gaines, Jr., all of Houston, for defendant in error.

MR. JUDGE HICKMAN delivered the opinion for the Court.

Mrs. Rosa C. Allen was the owner of 1388.44 acres of land situated in Harris County near the City of Houston. Harris County Houston Ship Channel Navigation District, hereinafter sometimes called Navigation District, desired to purchase a certain portion of this tract, estimated to contain about 500 acres, to be used by it as a dumping ground for silt dredged from its ship channel. It referred the matter to its general

attorney to carry on the negotiations. The attorney owned or controlled all of the stock of Greater Houston Improvement Company, hereinafter sometimes called Improvement Company. Since Navigation District did not desire to acquire the entire tract and Mrs. Allen was unwilling to sell less than the whole, the attorney decided to purchase it all for his company and have the latter convey to Navigation District the particular portion which it desired to acquire. After some negotiations between the attorney and Robert Stuart, a grand-son and agent of Mrs. Allen, a contract of sale and purchase was entered into between Mrs. Allen and Improvement Company on May 3, 1927. Pursuant to that contract Mrs. Allen, by deed dated June 27, 1927, conveyed to Improvement Company the entire 1388.44 acres at an agreed consideration of $475.00 per acre, amounting to a total consideration of $659,456.75, of which $60,000.00 was paid in cash and the balance evidenced by vendor's lien notes, to further secure which Improvement Company executed a deed of trust to W. S. Cochran, trustee. On the same day, June 27, 1927, Improvement Company conveyed to Navigation District 484.69 acres of the land at $450.00 per acre, $60,000.00 of which was paid in cash and the balance of $158,110.50, evidenced by vendor's lien notes executed by Navigation District and payable to Improvement Company. These notes were paid a few months later and thereupon Improvement Company paid $146,000.00 of the proceeds thereof to Mrs. Allen. A release of its second lien was executed by Improvement Company to Navigation District. Navigation District's attorney did not advise it of the existence of Mrs. Allen's liens.

Prior to the consummation of the sale from Mrs. Allen to Improvement Company the latter entered into a contract with J. E. Sieber for the sale by it to him of 414.40 acres of this land at $497.50 per acre, making a total consideration of $203,-477.50, of which $20,000.00 was to be paid in cash and the balance to be evidenced by vendor's lien notes. By this contract Sieber acquired the right to purchase all of the remainder of the tract, except that to be sold to Navigation District, at $600.00 per acre. This option was never exercised, but the tract of 414.40 was conveyed by Improvement Company to Sieber by deed dated July 5, 1927, for the consideration mentioned in the contract. The portion of the land remaining after the conveyances to Navigation District and Sieber, amounting to 489.24 acres, is still owned by Improvement Company. The deed from Mrs. Allen to Improvement Company contained covenants regarding the execution of releases to portions of the

tract, which will be hereinafter more fully shown. Improvement Company's deed to Sieber contained similar covenants, but its deed to Navigation District contained none. Two years after Navigation District paid off its notes to Improvement Company Sieber borrowed the money from Rice Institute with which to pay the balance due on his notes to the same company, securing the loan by a lien on the land. Before concluding the loan the Institute required a release of Mrs. Allen's lien, and Improvement Company made the request of Mrs. Allen, paying her at the same time a part of the money received by it from Sieber. It all constituted but one transaction. Two years before that time it had paid Mrs. Allen out of the money received from Navigation District $146,000.00 on its notes to her, and by the payment to her of a part of that which it was receiving from Sieber, was entitled to a release of a tract the size of the one it had sold Sieber. The release was accordingly executed. We have not made a minute search of the voluminous record in this case to ascertain what part of the $146,000.00 payment was required to bring up the other payments to the requisite amount to entitle Sieber to a full release, but apparently it was a very substantial part of it.

In 1931 Improvement Company made default in its payments on its vendor's lien notes executed in favor of Mrs. Allen, and Mrs. Rosa Allen Williams, executrix of the estate of Mrs. Allen, then deceased, exercised the right retained in the notes to mature the entire balance owing thereon. This action was brought by Mrs. Williams as executrix, against Improvement Company to recover the unpaid balance on the vendor's lien notes executed by the latter in favor of Mrs. Allen and to foreclose the vendor's lien and deed of trust lien on all of the tract of 1388.44 acres of land, less the Sieber tract theretofore released. Navigation District was made a party defendant, and, as to it, the plantiff sought judgment of foreclosure only. Her petition did seek to recover damages against it for waste, but on trial she dismissed this part of her alleged cause of action without prejudice.

In the trial court the executrix recovered judgment as prayed for, but on appeal by Navigation District the Court of Civil Appeals reversed that portion of the judgment foreclosing the lien upon the 484.69 acres purchased by the district, and rendered judgment denying any foreclosure thereon. 87 S. W. (2d) 813. Error was granted on application of the executrix.

Those provisions of the judgment awarding the executrix a personal recovery against Improvement Company, with a

foreclosure of the liens upon that portion of the land still owned by it, decreeing that it be first sold under the order of sale, and awarding Navigation District judgment over against Improvement Company on its warranty are not challenged. The only questions here for a review relate to the right of the executrix to a foreclosure of the vendor's lien and deed of trust lien upon the tract purchased by Navigation District from Improvement Company.

The deed from Mrs. Allen to Improvement Company contained the following covenants:

"* * *; and it is agreed and understood that releases of said vendor's lien and deed of trust may and shall be executed upon the following conditions, and terms, namely:

"A release of all said lands south of the road known as the Allendale-Pasadena Road, shall be executed upon payment at the rate of $475.00 per acre; all of said land between said road and Allendale Boulevard and the Allen-Genoa Road shall be released upon the payment of $475.00 per acre; and all of said lands north of Allendale Boulevard and west of the Allen-Genoa road shall be released upon the payment at the rate of $550.00 per acre; and all said lands east of the Allen-Genoa road shall be released upon payment at the rate of $500.00 per acre.

"Tracts in blocks of 5 acres or more, but less than the several tracts hereinabove agreed to be released shall be released upon the payment of the release value per acre for the particular zone as hereinbefore provided, plus twenty-five per cent but the amount to be paid to obtain such releases shall not in the aggregate exceed the total consideration for all of said lands.

"However, any such payments for releases shall be in addition to the cash down payment of sixty thousand dollars hereinbefore recited.

"In this connection it is further provided that payments in excess of $120,000.00 in any one calendar year shall not be made."

It will be observed that two character of releases are provided for. The first, referred to in the briefs as the zone method, provides for the execution of releases to all lands in a defined zone upon the receipt by Mrs. Allen of payment at the rate per acre stipulated for that particular zone. The second method provides for the releasing of tracts less than a zone in blocks of five acres or more, but in order to be entitled to releases of such smaller tracts, a payment of the release value per acre for the particular zone, of which the small tracts

form a part, plus 25 per cent of that value is required. We further observe that the cash down payment of $60,000.00 may not be considered in determining the right to a release.

That the vendor's lien and deed of trust lien retained by Mrs. Allen were valid liens upon all of the land conveyed by her is not, and could not be, disputed. Her right to a foreclosure decree upon all of the unreleased lands of the larger tract is clear, unless that right is defeated by some defense alleged and proved by Navigation District. We shall therefore consider only those defenses which were pleaded by it. As we understand the pleadings, the first defense alleged is that Navigation District, as the first purchaser from Improvement Company, obtained the continuing equitable right to have all the payments made by Improvement Company to Mrs. Allen so applied as to procure a release of its tract, and this regardless of the source from which the payments were obtained, and notwithstanding it had been applied by Improvement Company for the purpose of procuring a release of the Sieber tract.

The next defense, pleaded in the alternative, is that the reasonable value of the tract conveyed to Sieber by Improvement Company be first credited on Mrs. Allen's notes before any recourse be had against Navigation District's land. In connection with this defense we observe that Improvement Company did so apply a large portion of the Sieber payments. The balance it retained. The next defense, in the further alternative, alleges that of the $162,996.76, which Navigation District paid to Improvement Company in discharge of the second lien notes executed by the former to the latter, $146,000.00 thereof was paid to Mrs. Allen with knowledge on her part of the source from which it was obtained, and that such payment operated ipso facto as a release of such number of acres of Navigation District's land as is represented by the quotient obtained by dividing 146,000 by the release value per acre applicable to Navigation District's lands. This release value is alleged to be $500.00 per acre plus 25 per cent, or $625.00, when released in a block of five acres or more. Dividing 146,000 by 625 the result is 233.6. Wherefore it prayed that it be permitted to designate 233.6 acres of land, and upon such designation have it decreed released and discharged from plaintiff's liens.

These defenses interlock and will, therefore, be considered together. The equitable rule of inverse order of alienation has no general application in this case. The covenants in the deed prevent its application to parcels validly released. Mrs. Allen

had the unquestioned right to convey her tract of land as a whole without any covenants with regard to releasing parts less than the whole, and, had she done so, no equities would have arisen in favor of her vendee or sub-vendees on account of partial payments. Just as certainly she had the right to prescribe the terms and conditions upon which partial releases would be executed, and no equities thereafter arising between her vendee and sub-vendees could enlarge or restrict them. These terms and conditions both create and measure the rights of her vendee and sub-vendees, and a holding that the first sub-vendee acquired an equitable right which would be violated by the execution of a release to a later purchaser, who became entitled thereto under them, would be to qualify and, in effect, destroy her free right to contract. When Navigation District purchased its tract it did so with knowledge that subsequent purchasers of other portions of the remaining tract were entitled by contract to have such portions released from the lien by complying with the requirements of the deed. The release of the Sieber tract was executed by Mrs. Allen upon application of Improvement Company after it had paid to her sufficient money to entitle Sieber thereto under the terms of the deed. Mrs. Allen did what she had theretofore validly obligated herself to do, and cannot be prejudiced on account thereof. This principle is stated in Jones on Mortgages, 8th Ed., Vol. 3, Sec. 2089, p. 565, in this language:

"The rule does not apply in case the mortgage provides that in the event of a sale of any portion of the mortgaged lands, the mortgagee shall, upon payment to him of the purchase-money for such portion, release the same from the mortgage and credit the amount so received on the mortgage debt, and the mortgagee accordingly, receives for the portion of the land sold part of the purchase-money in cash and notes for the remainder and reserves a lien upon such portion for the deferred payments; but in case of default on the mortgage, foreclosure should first be had on the portion so sold for the amount due on the notes given for the deferred payments before resorting to the land held by the mortgagor or held by a purchaser from him succeeding to his equities."

In the same volume in Sec. 2096, the same principle is stated in this language:

"But where by the terms of the mortgage the mortgagee has agreed to release any portion of the mortgaged land upon receiving a certain price per foot, and the mortgagor divides the land into lots and sells two of them by warranty deed to

different purchasers, who build dwelling-houses upon the lots, and one purchaser obtains a release of his lot upon paying to the mortgagee the stipulated price per foot for the land, the other purchaser can not restrain the mortgagee from selling his lot under the mortgage, the lots remaining unsold not being worth enough to pay the mortgage debt; but such purchaser is entitled to redeem on paying the stipulated price per foot."

■ Although its officers had no actual knowledge thereof, Navigation District cannot be heard to say that it had no notice of Mrs. Allen's lien or of the terms and provisions of the deed from her to Improvement Company. That deed formed an essential link in the chain of instruments through which it derived title, and the law charges it with notice of every matter affecting the estate which appears in that deed. Peters v. Clements, 46 Texas, 114; Davidson v. Ryle, 103 Texas, 209, 124 S. W., 616, 125 S. W., 881; Elliott v. Wallace (Com. App.), 59 S. W. (2d) 109.

As stated in 14 Tex. Jur., p. 982, Sec. 195, "A grantee of land is chargeable with notice of the facts appearing in all the deeds in his chain of title, whether recorded or not."

We are well convinced that Navigation District is not entitled to have 233.6 acres, or any less amount, of land released from the liens in this proceeding. Whatever right it has must come under the terms of the covenants contained in the deed. The covenant relied upon to support this claim provides for the release of tracts in blocks of five acres or more, and it may be conceded, for the purposes of this opinion, that, had Improvement Company at the time it paid Mrs. Allen the $146,-000.00, requested of her a release of a designated tract of 233.6 acres, it would have been entitled thereto. But no such request was presented. Navigation District, while charged by law with notice of Mrs. Allen's lien, paid this money and more to Improvement Company in discharge of its second lien notes and without making any request that any portion thereof be paid to Mrs. Allen or that a release of any land be executed. That money thereupon became the property of Improvement Company to apply as it saw fit. Two years later that company applied to Mrs. Allen for a release of the Sieber tract. It was enabled to procure it because it had paid her a sufficient sum of money gotten from both Sieber and the District to justify such a release. The release contained this recital:

"* * * it is expressly understood that this release is limited to the land enclosed in the field notes hereinbefore set out; and

it is further distinctly understood, agreed and stipulated that this release is a partial release only, and that as to all other lands not heretofore released and not hereby released, the vendor's lien and deed of trust lien upon acreage conveyed to Greater Houston Improvement Company are continued in full force and effect."

■ Had application been made by Improvement Company for a release of Navigation District's land, or a portion thereof, instead of Sieber's, it doubtless would have been granted. It avails nothing to state that it should have requested a release pro tanto of the land sold the district. The fact is that it did not do so and Mrs. Allen cannot be made to suffer on that account. No request was ever made to her or her executrix for a release on behalf of the district until it did so in its answer filed in this foreclosure suit after default by Improvement Company which was four years after the $146,000.00 had been paid to Mrs. Allen and two years after Sieber's land had been released. During all of that time Navigation District continued to occupy, claim and use the entire tract of 484.69 acres as a dumping ground for silt. Without undertaking to announce a general rule applicable in all cases, we hold that under these circumstances the request comes too late. Gregg v. Texas Bank & Trust Co., 235 S. W., 689 (error refused); Reed v. Jones, 133 Mass., 116; Jones on Mortgages, 8th Ed., Vol. 2, Sec. 1259, page 752. From the last authority we quote:

"* * * Even if the privilege is not expressly limited to the maturity of the mortgage, it seems that a partial release can not afterward be demanded, for it would be a fraud upon the rights of the mortgagee to hold that the mortgagor, while in default and no longer endeavoring to carry out his contract, should be permitted to select out the more valuable parts of the land and redeem them by paying the stipulated price, and leaving the less valuable parts unredeemed. Certainly, after a foreclosure suit has been begun, the mortgagor's right to claim releases under the contract is gone."

Further, no particular tract was described or designated by Navigation District in its pleadings and no evidence whatever was offered upon the trial to guide the court in determining what acres to cut off from the larger tract. We cannot reverse an errorless judgment, and it clearly cannot be held that the trial judge erred in not himself undertaking to select and describe certain acres which might equitably be taken out from

under the lien when there were neither pleadings nor evidence to guide him.

This opinion has been prepared under the assumptions, 1st, that the covenants in Mrs. Allen's deed ran with the land and were, therefore, available for her sub-vendees, and, 2nd, that Navigation District, and not Sieber, was the first purchaser from Improvement Company. Much of the briefs is devoted to a discussion of these issues, but, since defendant in error has not met the conditions entitling it to a release under either view of them, we have assumed them in its favor. However, it is not intended that this opinion be construed as deciding either question.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.

*Opinion adopted by the Supreme Court December 2, 1936.*

Rehearing overruled January 6, 1937.