## MURCHISON et al. v. FREEMAN et ux.
### No. 3809.

Court of Civil Appeals of Texas. El Paso.
March 30, 1939.

Rehearing Denied April 20, 1939.

Burges, Burges & Scott, J. F. Hulse, and Jos. G. Bennis, all of El Paso, for appellant.

E. B. Elfers and D. J. Smith, both of El Paso, for appellee.

WALTHALL, Justice.

We adopt as substantially correct the statement of the nature and result of this suit as found in appellants' brief.

On May 30, 1930 Benjamin Freeman and wife, Jennie Freeman, executed and delivered to the Mortgage Investment Company their fifteen promissory notes in the total principal sum of $11,500, a note being due every six months thereafter until the 30th day of May, 1935 when the last six notes of the series became due and payable, notes bearing interest payable semi-annually at the rate of seven percent per annum; and on May 30, 1930, to secure the payment of said notes Benjamin Freeman and wife, Jennie Freeman, executed and delivered to S. M. Murchison, Trustee, their deed of trust upon four separate parcels of real estate located in the City of El Paso, Texas. This deed of trust contained a provision that when the grantors had paid $2,000 on said notes, the holders of the notes would release Lot 15 and the southerly one-half of Lot 14, in Block 43, of Alexander Addition to the City of El Paso; or, if grantors preferred, they would release a certain parcel of real estate in Franklin Heights when $1,500 had been paid; or they would release a certain parcel of real estate in Highland Park Addition when $1,500 had been paid. The deed of trust also contained a covenant to be kept on the part of the mortgagors that they would pay the said notes as the same became due and payable, and that they would pay the taxes before the same became delinquent. The first eleven notes were each in the principal sum of $500, and thus when the first four notes were paid the sum of $2,000 had been paid on the principal of the entire series.

Before the first four notes were paid the makers of the notes were in default thereon, and note No. 4, which was due on May 30, 1932, was not finally paid until January of 1933, by which time note No. 5, which fell due on November 30, 1932, was past due and unpaid. Subsequently a part of note No. 5 was paid, to-wit, $400, but the balance of that note, to-wit, $100, and the principal of all of the remaining notes has never been paid. No demand for a release of any or either of the three parcels of real estate referred to as a partial release provision of the deed of trust was made by plaintiffs or either of them until sometime in 1937, at which time plaintiffs were in default of payment of a part of note No. 5 and all of the remaining notes of the series, and at which time they were likewise in default in the payment of interest and taxes.

The demand made by plaintiffs in 1937 for a release of Lot 15 and the southerly one-half of Lot 14, in Block 43, of Alexander Addition was refused, and in May of that year S. M. Murchison, Trustee in the deed of trust, posted notices of a trustee's sale of said property to be held on the first Tuesday in June. After these notices were posted and before the sale date plaintiffs filed their suit seeking in effect specific performance of the partial release provision, that is, they prayed that the lien of the deed of trust on the property in Alexander Addition be cancelled, and plaintiffs filed a lis pendens notice. In plaintiffs' petition their right to this parcel of property was placed first, upon the ground that at the time of the execution of the deed of trust this property was their homestead and, therefore, the purported lien was void; and, secondly, upon the ground that they had paid in $2,000 on the notes and therefore were entitled to a release of this parcel. When the case came on for trial the homestead issue, which was a contested issue of fact, was submitted to a jury which found that this property was not plaintiffs' homestead at the time of the execution of the deed of trust. Both plaintiffs and defendants thereupon filed motions for judgment, upon consideration of which the court concluded that plaintiffs, notwithstanding their own default upon the payment of the notes in violation of their covenant in the deed of trust to pay said notes and their own default in failing to pay interest and taxes prior to the time demand for release was made,

were entitled as a matter of absolute right upon payment of $2,000 on the principal of said notes to the release of said parcel of real estate, and this without regard of what the other circumstances were. The court further concluded that notwithstanding said default on the part of plaintiffs and their failure to do or to offer to do equity, that they were entitled to the equitable relief sought by them in the cancellation of this lien and a cancellation of the trustee's deed insofar as it covered this particular parcel of property, and judgment was accordingly rendered by the court for the plaintiffs. Hence this appeal.

### Opinion.

The provision in the deed of trust providing for a release from the deed of trust, and referred to in the statement of the nature and result of the suit, is as follows: "It is understood and agreed by and between the parties hereto that the Mortgage Investment Company of El Paso, Texas, its successors or assigns, will release Lot 15 and the southerly one-half of Lot 14, in Block 43 of Alexander Addition to the City of El Paso, from the tenor and effect of this deed of trust when the grantors herein have paid $2000 of the notes herein described and hereby secured; or, if the grantors herein prefer, Mortgage Investment Company of El Paso, Texas, will release the east five feet of Lot 5, all of Lot 6, and the west seven and a half feet of Lot 7, in Block 93 of the Franklin Heights Addition to the City of El Paso, Texas, when the grantors herein have paid $1500 of the notes hereinabove described and hereby secured; or, Mortgage Investment Company of El Paso, Texas, will release Lots 1 and 2, in Block 7 of the Highland Park Addition to the City of El Paso, Texas, when the sum of $1500 has been paid on the notes herein above described, and hereby secured."

Supplementing the above statement from appellants' brief we add a statement made by appellees more specific as to the facts.

Notes Nos. 1, 2 and 3, each in the amount of $500, were paid when due; note No. 4, falling due May 30, 1932, was paid in three installments, $200 on August 11, 1932, $200 on December 1, 1932, and $100 on January 18, 1933, making a total of $2000 paid on the principal of said notes of that date. While these payments were being made payments were also be-

ing made on note No. 5, and these payments on No. 5 were continued after note No. 4 was fully paid until a total of $400 had been paid on No. 5. The interest was paid on all notes up to November, 1935, and all taxes for the year 1931, which became delinquent on March 1, 1932, were paid by February 21, 1932.

Appellees made no further payments except interest payments. In December, 1935, at appellants' request, appellees authorized appellants to collect the rents on all the properties and apply same on appellees' debts, which the record shows was done.

This suit was filed May 27, 1937 and lis pendens notice filed same day. The trustee's sale was made on June 1, 1937, at which sale all four pieces of property were sold and bid in by the trustee for the noteholders.

Appellants discuss the first three propositions together.

The pertinent facts contained in the propositions are embodied in the above statement of the nature and result of the suit to which we refer without restating them here.

The contentions of appellants are to the effect: there being nothing to the contrary in the deed of trust, it will be presumed that the provision in the deed of trust for partial release of one parcel out of four parcels of real estate was to be enforceable by mortgagors only while they were not in default in their payments on the notes, the payment of which the deed of trust was given to secure; that the deed of trust contained a covenant that the mortgagors would pay the notes as they became due and would pay the taxes before they became delinquent, and the mortgagors being in default in the payment of a subsequent installment when they paid the money making an aggregate of $2000 paid in, and being in default of all the balance of said notes, and having allowed taxes to become unpaid and delinquent before demanding a release or specifying which parcel they desired to have released, they were not entitled to a partial release; that the provisions in the deed of trust to pay the notes and the taxes before they became delinquent were reciprocal provisions in the same instrument and the mortgagors were not entitled to enforce a provision in their favor and at the same time fail and refuse to perform an obligation resting upon them by other provisions of the same instrument.

The reasons given by appellants for their contentions are to the effect that there being nothing to the contrary in the deed of trust, it will be presumed that it was the intention of the parties that the partial release would be given only in the event the mortgagors were performing their part of the contract, such as keeping the payments paid as they matured, and thus not violate that maxim of equity jurisprudence, "He who seeks equity must do equity."

In this suit appellees seek to enforce a provision in a deed of trust given by them on four parcels of real estate to secure a loan to them of $11,000 from the Mortgage Investment Company. The indebtedness is evidenced by a series of fifteen promissory notes, the first of the notes falling due November 30, 1930, and one note falling due every six months thereafter until May 30, 1935, when the balance of the obligation matured.

The deed of trust contained the provision above stated for a release from the deed of trust of one of the parcels of land when appellees, the grantors, "have paid $2000 of the notes herein described and hereby secured." The above provision in the deed of trust sought to be enforced by the suit applies to one of the four parcels of land described in the deed of trust.

All that the deed of trust, by its terms, requires of appellees in order to obtain the release is: "When the grantors herein have paid $2000 of the notes hereinabove described." Appellants' statement we have copied above recited: "The first eleven notes were each in the principal sum of five hundred dollars, and thus when the first four notes were paid the sum of two thousand dollars had been paid on the principal of the entire series."

The evidence shows and the trial court found that prior to the time notices of the trustee's sale were posted, appellees had made demand for the release and had made the required payment on the notes prior to the deed of trust foreclosure proceedings, and judgment was so rendered.

Appellants make the contention that the deed of trust contains the covenant for the payment of the $11,000 indebtedness and the payment of the taxes on the property given to secure the payment of the entire indebtedness before they became delin-

quent, there being nothing to the contrary in the deed of trust, and that it should be held that the provision for the release of one parcel of the real estate was to be enforceable by the mortgagors only while the mortgagors were not in default on payments on the notes.

Appellants refer to many cases as supporting their contentions, among them we note Williams v. Harris County Houston Ship Channel Nav. Dist., 128 Tex. 411, 99 S.W.2d 276, 110 A.L.R. 59, in which Judge Hickman, Commissioner, in the opinion referred to Jones on Mortgages (8th Ed.) Vol. 2, par. 1259, page 752; Reed v. Jones, 133 Mass. 116; Chatsworth Estates Co. v. Chatsworth Estates Co., N.J.Ch., 121 A. 517; Pomeroy's Equity Jurisprudence, Sec. 385; 17 Tex.Jur. pp. 44 to 48.

We have examined the above authorities and have concluded the facts distinguish them from the instant case. None of the cases hold, as contended by appellants, that parties to a deed of trust may not agree to a partial release. To so hold would in effect destroy their right to contract for a partial release. To contract for a partial release as here done is not contrary to public policy. The terms of a deed of trust are strictly construed. The terms and conditions there written both create and measure the rights of the parties thereto. We may not add to nor take from what is there provided.

In the Williams v. Harris County Houston Ship Channel Navigation District case, supra, the opinion states in part [128 Tex. 411, 99 S.W.2d 279]: "Mrs. Allen had the unquestioned right to convey her tract of land as a whole without any covenants with regard to releasing parts less than the whole, and, had she done so, no equities would have arisen in favor of her vendee or subvendees on account of partial payments. Just as certainly she had the right to prescribe the terms and conditions upon which partial releases would be executed, and no equities thereafter arising between her vendee and subvendees could enlarge or restrict them. These terms and conditions both create and measure the rights of her vendee and subvendees, and a holding that the first subvendee acquired an equitable right which would be violated by the execution of a release to a later purchaser, who became entitled thereto under them, would be to qualify and, in effect, destroy her free right to contract."

The above, we think, expresses a general principle applicable to the instant case. California State Life Ins. Co. v. Elliott, Tex.Civ.App., 193 S.W. 1096, writ refused, we think is in point.

The following cases, we think, are in point and sustain appellees' contentions: Gammel v. Goode, 103 Iowa 301, 72 N.W. 531; Vawter v. Crafts, 41 Minn. 14, 42 N.W. 483.

We find no reversible error, and the case is affirmed.