## REPUBLIC NAT. BANK OF DALLAS v. EIRING.

No. 6156.

Court of Civil Appeals of Texas. Amarillo.

May 21, 1951.

Golden, Croley & Howell, Dallas, for appellant.

P. B. Randolph, Plainview, for appellee.

MARTIN, Justice.

J. C. Eiring, appellee, sued Republic National Bank of Dallas, Trustee of the Estate of A. M. McMillan, deceased, Mrs. Minnie McMillan, a widow, and Claude Carter McMillan, in statutory trespass to try title to recover title to the Northeast ¼ of Section 22, Block D–5, Hale County, Texas. The suit resolved itself into a contest as to the title to an undivided 45 acre interest in the minerals in and under said tract as held by the Republic National Bank of Dallas, as trustee of the Estate of A. M. McMillan. The trial court rendered judgment for the appellee, J. C. Eiring, and Republic National Bank of Dallas, appellant, perfected an appeal.

The basis of the cause of action is a deed executed by J. C. Eiring and wife, Carrie Eiring, to D. B. Earnest. This deed is in the appellant's chain of title to the mineral interest as claimed. The appellee asserts that the deed does not contain a sufficient description of the mineral interest to convey title and also alleges that the deed was procured by fraud.

Appellant predicates its appeal on three points of error. The First Point of Error asserts that the description of the mineral interest in the deed from Eiring and wife to D. B. Earnest was sufficient to divest the Eirings of title to an undivided 80 acre fee interest under the Northeast ¼ of Section 22, Block D–5, Hale County, Texas. Appellant's Second and Third Points of Error will be outlined and discussed following a ruling on the first point of error hereinabove stated.

Appellant's First Point will be considered under two subdivisions for convenience as to discussion. The first issue is whether the description in the deed from J. C. Eiring and wife to D. B. Earnest is sufficient. The second issue is whether the description of the mineral interest, if insufficient in itself, was cured by a provision in the deed as to division of delay rentals in an oil lease to Kingwood Oil Company and as to ownership of the lease interest on the termination of the Kingwood lease.

The granting clause of the deed in issue as to the description of the mineral interest attempted to be conveyed is as follows: "An undivided Eighty ——— interest in and to all of the oil, gas and other minerals in and under and that may be produced from the following described lands situated in Hale County, Texas, to wit: Northeast ¼ of Section 22, Block D–5, Hale County, Texas."

This description is insufficient to divest title out of J. C. Eiring. "Where a deed contains a blank as to, or in, the description of the property, and such blank is not filled in before delivery, the deed is void." 26 Corpus Juris Secundum, Deeds, § 30j., page 222; Farmers Royalty Holding Co. v. Jeffus, Tex.Civ.App., 94 S.W.2d 255; Tarrant County v. McLemore, Tex.Sup., 8 S.W. 94; Reserve Petroleum Co. v. Hodge, 147 Tex. 115, 213 S.W.2d 456, 7 A.L.R.2d 288; Francis v. Thomas, 129 Tex. 579, 106 S.W.2d 257; Sullivan v. Fant, Tex.Civ.App., 160 S.W. 612, page 621; Blankenship v. Mott, Tex.Civ.App., 104 S.W.2d 607.

Appellant's strongest contention under his first point is based on the second phase of such point wherein appellant asserts that the description in blank in the deed was cured by reference to a certain mineral lease. In support of this theory, the appellant introduced in evidence the lease which was executed by J. C. Eiring and wife to the Kingwood Oil Company and contains the following provisions:

"And said above described lands being now held by Kingwood Oil Company, it is understood and agreed that this sale is made subject to said lease, but covers and includes an undivided Eighty ——— interest of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease.

"It is agreed and understood that one-half of the money rentals which may be

paid to extend the term with which a well may be begun under the terms of said lease is to be paid to the said D. B. Earnest and in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by D. B. Earnest and J. C. Eiring owning an undivided Eighty ———— interest in all oil, gas and other minerals, in and upon said land, together with an undivided Eighty ———— interest in all future rentals."

The above provision as to the Kingwood Oil Company lease reveals that the "Eighty" interest is inserted in blank so the deed is still open to conjecture as to whether it refers to acres, percentage or a fractional interest. Appellant says it is apparent that all the blanks in the deed should contain "acres." But, it is evident that the blanks could as well be filled in to read 80/100 or other like fraction or as the fancy might dictate. Appellant's reasoning is based upon the theory that since D. B. Earnest is to receive one-half the delay rental on the Kingwood oil and gas lease on the Northeast ¼ of Section 22, that he is therefore the owner of one-half the minerals under said Northeast ¼ of Section 22. Appellant also applies the same theory to the clause as to the ownership of the lease interest and future rentals on the termination of the Kingwood lease.

Appellant's theory above outlined is a house of cards based solely upon the primary assumption that the lease to Kingwood Oil Company is upon the Northeast ¼ of Section 22, Block D–5, Hale County, Texas. The fallacy of appellant's theory is shown by checking the Kingwood Oil Company lease wherein it is found that such lease does not in fact cover the Northeast ¼ of Section 22, Block D–5, Hale County, Texas, but covers "the East ¼ of Section 22, Block D–5, Hale County, Texas." Therefore, if we are to assume that the rentals payable under the Kingwood lease are the measuring stick for the mineral ownership, then Earnest was the owner of one-half the minerals under the East ¼ of Section 22, rather than one-half

the minerals under the Northeast ¼ of Section 22, aforesaid. Under appellant's theory, based on the same lease, likewise must fall the reversionary interest as any measuring stick of the mineral interest at issue.

It must be admitted that the expression "Eighty ————" gives no basis under which we may even guess at the interest at issue. Further, if we take the clause, "the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by D. B. Earnest and J. C. Eiring owning an undivided Eighty ————" and insert "acres" in the blank as suggested by the appellant, we still have arrived at no sound principle of construction. If Eiring and Earnest, under the expression "jointly," own the interest equally as contended by appellant then they own equally an undivided eighty acres, and each therefore owns separately an undivided forty acres. For each of said persons to own an undivided eighty acres the two would of necessity have to jointly own one hundred sixty acres.

Further considering appellant's theory as to the division of delay rental, it is not a sound assumption that the delay rental on an oil and gas lease is always divided according to the ownership of the minerals and in the same ratio. If such an assumption were to be indulged here it is properly answered by reference to a mineral deed inserted in this record by appellant wherein it is recited that McMillan was to receive one-half the money rentals under the Kingwood Oil Company lease, yet McMillan received in his deed only a sixty acre mineral interest.

The description in the mineral deed was insufficient and such description is not cured by any reference to the mineral lease to Kingwood Oil Company or the rentals payable thereunder or otherwise. Appellant's Point One is overruled.

The overruling of appellant's Point One effects an affirmance of the trial court's judgment and places a ruling on appellant's Points Two and Three somewhat in the field of academic discussion. These two points raise highly interesting points of law

and Point Three enters a field of law where may be found a diversity of opinion.

■ Appellant's Point Two asserts that the court should not have admitted the testimony of J. C. Eiring that the execution of the mineral deed was procured by fraud, because there was no evidence that A. M. McMillan, deceased, had any notice of the alleged fraud prior to the acquisition of the mineral interest. Appellant's contention under this point is that the burden of proof was on the appellee to prove that McMillan was not an innocent purchaser for value and that appellee had failed to make such proof. The rule is apparently settled that in a case wherein the defendant holds the legal title and the plaintiff holds the equitable title, the burden of proving that defendant was not an innocent purchaser for value is upon the plaintiff. Dixon v. Cargill, Tex.Civ.App., 104 S.W.2d 101, 102, (refused): "But the title asserted by Dixon was an equitable one. Cargill held the legal title. Under these circumstances, Dixon cannot recover without proof that Cargill, when he purchased from Rogers, had knowledge of Dixon's equitable title. The burden was upon Dixon to prove that Cargill was not an innocent purchaser." (Citing many authorities).

Hall v. Wilson, Tex.Civ.App., 215 S.W.2d 204; Teagarden v. R. B. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973; Bailey v. Shell Petroleum Corp., Tex.Civ.App., 95 S.W.2d 982 (refused).

■ Appellant's Point Two must rest upon the proposition that the description of the mineral interest in the deed was sufficient and that A. M. McMillan was an innocent purchaser for value of the mineral interest. Since the deed in McMillan's chain of title in attempting to describe the mineral interest conveyed left such description in blank, the deed was void and McMillan could not take as an innocent purchaser for value. Williams v. Harris County Houston Ship Channel Nav. Dist., 128 Tex. 411, 99 S.W.2d 276, 280, 110 A.L. R. 59:

"That deed formed an essential link in the chain of instruments through which it derived title, and the law charges it with notice of every matter affecting the estate which appears in that deed. * * *

"As stated in 14 Tex.Jur. p. 982, § 195, 'A grantee of land is chargeable with notice of the facts appearing in all the deeds in his chain of title, whether recorded or not.'"

Strong v. Strong, 128 Tex. 470, 98 S.W. 2d 346, 348, 109 A.L.R. 739: "A purchaser of land must search the records, for they are the primary source of information as to title and he is charged with knowledge of the existence and contents of the recorded instruments affecting the title."

■ This cause is not one where the deed is regular on its face as is found in most of the cited cases on fraud and is not one wherein the grantee holds the legal title and the grantor has the equitable title. These elements take the cause out of the rule expressed in Dixon v. Cargill, supra.

Under the facts herein, appellant's Point Two is overruled.

Appellant's Point Three raises the sole issue as to whether under a formal trespass to try title petition, the plaintiff (appellee herein) may introduce testimony in evidence to the effect that a deed to which the defendant was not a party was procured from the plaintiff by fraud. This field of discussion ranges from Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025, 1031, cited by appellant, holding, "A deed obtained by fraud is not void but voidable only. As between the original parties Rush's title is prima facie good, and it could only be avoided by a suit and a decree annulling and canceling the deed. Cook v. Moore, 39 Tex. 255", to Binford v. Snyder, 144 Tex. 134, 189 S. W.2d 471, 473, wherein the following rule is approved: "'that an equitable title may be interposed by a defendant, to prevent a recovery, in an action of trespass to try title', citing the case of Neill v. Keese, 5 Tex. 23, 51 Am.Dec. 746, and the court further declared: '* * * and we see no reason why a plaintiff may not recover upon such title.'" (Citing many authorities).

Many cases may be found supporting the proposition that equitable title will support an action of trespass to try title. Hall v. Miller, Tex.Civ.App., 147 S.W.2d 266; Schuyler v. Lacy, Tex.Civ.App., 79 S.W.2d

418

901; Rodriquez v. Vallejo, Tex.Civ.App., 157 S.W.2d 172. But the issue may turn on the question of whether the party seeking relief has equitable title or a mere equity. Johnson v. Wood, 138 Tex. 106, 157 S.W.2d 146; Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471.

■ As to the issue of equitable title where the same is predicated upon fraudulent procurement of a deed, the law should be regarded as settled. 26 R.C.L., page 1236, Sec. 83, states the following rule: "It is a well settled general rule that if one person obtains the legal title to the property, not only by fraud, or by a violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner."

■ Under the authorities and discussion herein, it must be kept in mind that the rulings are principally with reference to a deed obtained by fraud but regular on its face. In the case here at issue it must be again borne in mind that we do not have a deed regular on its face but one lacking in a description of the property. Under the facts here in issue and the law applicable thereto, we do not have involved the proposition of a suit based on equitable title arising by reason of fraud practiced on the grantor. In this cause no legal title vested in the grantee as the deed contained no description of any mineral interest. Under the facts in this cause, in the light of the decisions, the appellee's formal pleading in trespass to try title authorized the introduction of evidence that the deed to D. B. Earnest was procured by fraud. Appellee still retained the legal title due to the inadequacy of the description in the deed.

But, aside from the issues here, it would appear, under the authorities, to be a sound proposition that where a deed was procured by fraud that a formal pleading in trespass to try title would be sufficient to authorize the introduction of testimony as to the procurement of the deed by fraud. Texas Creosoting Co. v. Hartburg Lumber Co., Tex.Com.App., 16 S.W.2d 255; Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471.

Appellant's Point Three is overruled.

The judgment of the trial court is affirmed.