**STEED v. CROSSLAND et al.**

**No. 4828.**

Court of Civil Appeals of Texas. Beaumont.
Oct. 30, 1952.

Rehearing Denied Oct. 20, 1952.

S. M. Adams, Jr., Nacogdoches, for appellant.

A. J. Thompson, Nacogdoches, P. G. Greenwood, Harlingen, for appellee.

WALKER, Justice.

Appellant sued appellees and others to recover title to and possession of the minerals in two tracts of land in the Edgar Pollett Survey in Nacogdoches County. The defendants other than the appellees defaulted and the appellant recovered judgment against them as prayed for; but after trial to the court with a jury judgment was rendered on the jury's verdict that appellant take nothing against appellees and that appellees recover the mineral interests claimed by them.

Ben W. Wilson is the common source of title. His title to the land is based on these three conveyances; (a) deed from J. C. Strickland to John Wilson and Benjamin W. Wilson, dated October 25, 1905, filed for record on November 13, 1905, and recorded in Vol. 58, p. 540 of the Deed Records of the county; (b) deed from Dr. M. C. Marrs to John Wilson and Ben W. Wilson dated June 15, 1906, filed for record on June 18, 1906, and recorded in Vol. 59, p. 246, of said deed records; (c) deed from John Wilson to Ben W. Wilson, dated January 25, 1913, filed for record January 31, 1913, and recorded in Vol. 81, p. 5 of said deed records.

By a deed dated December 5, 1917, and acknowledged by the grantor on the same date, B. W. Wilson (the Ben W. Wilson aforesaid) conveyed the two tracts to Robert Lindsay but retained "all mineral rights". The provision retaining the mineral rights constituted an exception whereby title to the minerals was retained by Wilson and the minerals were severed from the land, unless the severance did not take effect for the reasons advanced by appellees. The appellees have apparently agreed to this construction of the provision retaining mineral rights, but also see: Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; Heinatz v. Allen, 147 Tex. 512, 217 S.W. 2d 994. The land conveyed to Lindsay was described by referring to the several volumes and pages of the deed records at which were recorded the deeds vesting title in Wilson.

Title to the minerals subsequently vested in appellant unless appellees have acquired title thereto.

Wilson's deed to Lindsay was not filed for record until February 11, 1918 (apparently by Lindsay); and in the meantime Lindsay executed and delivered to the appellee T. S. Crossland the deed with which appellees' claim of title to the minerals originates. This deed did not specifically refer to the minerals; it described the land conveyed as follows: "Two tracts containing a total of 150 acres more or less, a part of the Edgar Pollette Survey of land in Nacogdoches County, Texas, situated about 12 miles north from the town of Nacogdoches, said two tracts of land fully described by metes and bounds in deed recorded in Vol. 58, p. 540, Vol. 59, p. 246, Vol. 81, p. 5, of the deed records of Nacogdoches County, Texas, and reference is here made to all of said deeds for complete description of the land herein conveyed. It being the same land conveyed to me by

B. W. Wilson of Caddo Parish, Louisiana, by deed dated December 5, A.D. 1917." It is to be noted at this point that Wilson's deed to Lindsay described him as a resident of Caddo Parish, Louisiana. Appellees did not claim title nor did they have possession of the land prior to this deed. The deed is dated January 7, 1918, was acknowledged by Lindsay on the same day, and was filed for record on January 19, 1918. All of this occurred before Wilson's deed to Lindsay was recorded and T. S. Crossland testified that he did not know of Wilson's exception of the minerals and thought that he was buying the land including the minerals. Crossland said that he made entry on the land a day or so after the deed of Lindsay's to him and this, too, was before Wilson's deed to Lindsay was recorded. In view of the jury's findings mentioned hereinafter we assume that his possession began at that time and continued afterwards during such periods of time as the jury's findings of compliance with the 5 and 10 year statutes of limitation require, Vernon's Ann. Civ.St. arts. 5509, 5510. T. S. Crossland discovered Wilson's exception of the minerals not long after his adverse possession of the surface began.

The title of the appellees' other than T. S. Crossland is deraigned from Mr. Crossland.

The appellees' title to the minerals is based solely upon a claim of adverse possession. Under Special Issue 1, the jury found that T. S. Crossland or those claiming under him had complied with the 5-year statute of limitation during the period beginning with January 19, 1918 (the date when Lindsay's deed to T. S. Crossland was recorded, about a week after Crossland's possession began) and ending with April 4, 1931. This finding is based upon Lindsay's deed to T. S. Crossland. Under Issue 2, the jury found that T. S. Crossland or those claiming under him had complied with the 10-year statute of limitation during the period ending with April 4, 1931; the beginning date of this period is not stated but Crossland's testimony shows that his claim originated with Lindsay's deed to him and that his possession began after that deed was made. The sufficiency of the evidence to support the jury's findings under Issues 1 and 2 has not been questioned.

Appellees' possession has been limited to the surface. They have never had, nor have they ever attempted to take possession of the minerals.

Appellees have not in any sense repudiated the deed from Robert Lindsay to T. S. Crossland. Instead, their claim of limitation title under the 5-year statute is founded upon this deed.

T. S. Crossland paid a valuable consideration for the conveyance to him by Lindsay. However, he made no examination of the county records when he purchased the land from Lindsay and there is nothing to show that he made any attempt at that time to see the deed from Wilson to Lindsay or that had he done so, he would have failed. Lindsay was to furnish him an abstract of title and an abstract actually was prepared, but this was not done until after T. S. Crossland made his purchase and took his deed and Crossland paid for it himself, after the abstracter had refused to complete it for Lindsay. It is evident that Crossland acted on the basis of some oral statement made to him by Lindsay, without any insistence upon Lindsay's showing his title otherwise. There is nothing to show that if T. S. Crossland had attempted to communicate with Wilson at the time of his purchase from Lindsay, he would have been unable to do so.

### Opinion.

■ 1. Appellees argue in support of the trial court's judgment that T. S. Crossland was an innocent purchaser because, they say, Wilson's exception of the minerals, which severed the minerals from the land, was not of record when T. S. Crossland bought from Lindsay, and Lindsay's deed to T. S. Crossland did not put Crossland on notice that the title to the minerals was outstanding and was not vested in Lindsay.

This argument is overruled and we hold that T. S. Crossland was not an innocent purchaser without notice of Wilson's exception of the minerals because Wilson's deed to Lindsay is in appellees' chain of title, and, in addition to this, Lindsay's deed to T. S. Crossland specifically refers to the

deed in which Wilson excepted the minerals. The fact that Wilson's deed to Lindsay was not of record when T. S. Crossland bought from Lindsay is not material. See: Gilbough v. Runge, 99 Tex. 539, 91 S.W. 566; Rio Bravo Oil Co. v. McEntire, 128 Tex. 124, 95 S.W.2d 381 at page 388 (Hn. 8), Id., 128 Tex. 124, 96 S.W.2d 1110; Williams v. Harris County Houston Ship Channel Navigation District, 128 Tex. 411, 99 S.W.2d 276, 110 A.L.R. 59; Loomis v. Cobb, Tex.Civ.App., 159 S.W. 305; Wallace v. Hoyt, Tex.Civ.App., 225 S.W. 425; Spiller v. Bell, Tex.Civ.App., 55 S.W.2d 634; W. T. Carter & Bro. v. Davis, Tex. Civ.App., 88 S.W.2d 596; Matthews v. Rains County, Tex.Civ.App., 206 S.W.2d 852; 14 Tex.Jur. 982 (Sec. 195); 36 Tex. Jur. 569 (Sec. 90); 43 Tex.Jur. 649 (Sec. 383).

■ 2. Appellees also argue in support of the trial court's judgment that Wilson's severance of the minerals in his deed to Lindsay did not take effect until this deed was recorded, and thus, until after their adverse possession had begun. This argument is overruled on the following gounds:

If there be no question concerning relation back, it is held that a deed takes effect between the parties when it is delivered to the grantee. See: Tuttle v. Turner, 28 Tex. 759, at page 773 ("A deed takes effect only from the date of its delivery, which may be either actual or constructive"); Croom v. Jerome Hill Cotton Co., 15 Tex. Civ.App. 328, 40 S.W. 146; Rogers v. Rogers, Tex.Com.App., 15 S.W.2d 1037; Davis v. Zeanon, Tex.Civ.App., 111 S.W.2d 772.

The legal affect which a failure to record a deed has upon the rights of parties affected by such conduct depends upon and is controlled by statute; and the statute applicable here is Art. 6627, V.A.T.S. which provides that unrecorded deeds "as between the parties and their heirs, and as to all subsequent purchasers, with notice thereof or without valuable consideration, shall be *valid and binding."* For applications of this provision of the statute, see: Watson v. First National Bank, Tex.Com.App., 285 S.W. 1050; Urban v. Bagby, Tex.Com.App.,

291 S.W. 537; 36 Tex.Jur. 528 (Sections 74, 75 and 76). Because of this statute it is necessarily held that a deed takes effect between the parties when delivered to the grantee, not when it is recorded. See: Phoenix Ins. Co. v. Neal, 23 Tex.Civ.App. 427, 56 S.W. 91 at page 93; Dutton v. Cloar, 26 Tex.Civ.App. 547, 65 S.W. 70, 72 ("The undisputed evidence shows that the deed from W. B. Cloar was executed and delivered on January 12, 1899. It took effect at that time, and this is true notwithstanding it was not filed for record for some months thereafter"); W. T. Carter & Bro. v. Davis, Tex.Civ.App., 88 S.W.2d 596 at page 601 ("The deeds from Helen B. Hardin, Mrs. Cynthia A. Skinner, and her husband, J. F. Skinner, and W. F. Hardin, to Wirt Davis reserved the minerals and so did effect a severance of the minerals from the surface estate, and the fact that said deeds were never recorded did not affect their validity"). And, of course, the same rule applies to subsequent purchasers with notice of the unrecorded deed. See: Parks v. Worthington, 101 Tex. 505, 109 S.W. 909.

■ Thus, between Wilson and his grantee Lindsay, the minerals were severed from the land (and retained by Wilson) when Wilson delivered his deed to Lindsay because this deed took effect at that time between Wilson and his grantee Lindsay. This event occurred before T. S. Crossland made his purchase and took his deed from Lindsay; and we have held that T. S. Crossland was not an innocent purchaser. Accordingly, Wilson's exception of the minerals was fully as effective as against T. S. Crossland as it was against Lindsay before him.

The consequence is that appellees' possession of the surface never extended to and included the minerals and thus appellees never acquired any title to the minerals. This title is vested in the appellant, who is accordingly entitled to judgment against appellees as prayed for by her. The two decisions cited by appellees in support of their argument based on adverse possession are not in point; in none of these cases was there such a severance as Wilson's excep-

tion of the minerals accomplished and the question concerned notice of adverse claim, not whether the claimant had adverse possession.

Appellant's Points 1 and 2 are sustained and appellees' counter-points 1 and 2 are overruled. It is unnecessary to discuss appellant's other Points of Error. The judgment of the trial court in behalf of appellees, denying appellant relief and decreeing a recovery by appellees, is reversed; and judgment is here rendered in behalf of appellant against the appellees for the title to and possession of the minerals sued for by her.